

Milana Dostanitch – Of Counsel

420 Lexington Avenue, Suite 1830
New York, New York 10170
Main: 212.392.4772
Direct: 212.764.5828
Fax: 212.444.1030
milana@lipskylowe.com

www.lipskylowe.com

July 14, 2022

VIA ECF
The Honorable Cheryl L. Pollak, U.S.M.J.
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    Raiter, *et al.* v. Dessert Place Bose Inc., *et al.*, 21-cv-04410 (CLP)

Dear Magistrate Judge Pollak:

This firm represents the Plaintiffs Oxana Raiter, Olga Samoylova Iram, Andrey Leontyev, and Eugene Azov in this Fair Labor Standards Act and New York Labor Law matter. We submit this letter, on behalf of all parties, seeking the Court's approval of the FLSA settlement agreement under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and *Wolinsky v. Scholastic Inc.*, No. 11-cv-5917 (JMF), 2012 U.S. Dist. LEXIS 93918 (S.D.N.Y. July 5, 2012).

I.    Summary of Plaintiffs' Claims and Damages

A.    Overview of Defendants' Business and Plaintiffs' Duties

Defendants Dessert Palace Bose Inc. d/b/a "Emmons Palace" and "Dessert Palace" and Efim Milrud ("Defendants") own and operate the Emmons Palace restaurant that serves Russian food in Brooklyn, New York. They employed Plaintiffs for various time periods in various positions:

- Oxana Raiter, worked as a bartender and barista from October 2014 to mid-April 2016, and then again from February 2017 to July 16, 2019;
- Olga Samoylova worked for Defendants as a barista and cashier from June 2017 to July 5, 2019;
- Andrey Leontyev worked for Defendants from Summer 2012 to September 2019, in various positions, including as a busser, barista, bartender and cashier; and
- Eugene Azov worked for Defendants as a server from 2013 to mid-November 2015. On as needed basis, he also sometimes filled in for other coworkers as a bartender, barista, and cashier.



They had the duties that befit their positions. As bartenders, cashiers and baristas, Raiter, Leontyev, Samoylova and Leontyev's duties included preparing drinks, cleaning the restaurants, serving customers food at the bar, closing out the register at the end of the night and handling cash and credit card transactions. Additionally, as a busser, Leontyev's duties included serving food to customers, setting up the chairs and tables inside and outside, and cleaning the restaurant. Regarding Azov, his duties as a server included taking customers' food and beverage orders, serving them food and drinks and performing non-tipped side-work each day.

B.    Days and Hours Worked

During all relevant times except for the winter months (November to February), Defendants scheduled their employees to work in two shifts: the morning shifts, which start between 10:00 a.m. and 12:00 p.m.; and the evening shifts, which start between 1:00 p.m. and 5:00 p.m. Each shift generally lasts 10 hours. Defendants did not have a defined start and end time for the shifts, rather the employees' schedules were staggered based on Defendants' needs, with some employees required to work the opening and closing shift on the same day resulting, in them working 14 to 17 hours per day.

During the winter months, Defendants generally scheduled only a single shift per day, sometimes sending employees home early, resulting in shifts lasting from 6 to 15 hours per day. Regardless of what season, Defendants never gave the Plaintiffs a 30-minute uninterrupted meal break. They, instead, worked while they ate.

1.    Raiter's Hours

Outside of the winter months, Raiter generally worked 5 to 6 days per week, from 2:00 p.m. to around 2:00 a.m., equaling at least 12-hour days and 60 to 72 hours per week. During the winter months, she generally worked 4 days a week, from 12:00 p.m. to 12:00 a.m., equaling 12-hour days and 48 hours per week.

2.    Samoylova's Hours

Samoylova's schedule changed over the years. From June 2017 to February 2017 during non-winter months, she worked 5 to 6 days per week: starting at 11:00 a.m. and working until 12:00 a.m. on weekdays and until 1:00 a.m. to 3:00 a.m. on Friday to Sunday, equaling 13 to 16-hour days and at least 65 to 78 hours per week.

From February 2019 to July 5, 2019 during non-winter months, she generally worked 5 days per week: working 3 days a week from 11:00 a.m. to at least 12:00 a.m., sometimes working till 3:00 a.m.; and 2 days a week from 1:00 p.m. to at least 12:00 a.m., and again sometimes till 3:00 a.m., equaling 11 to 16 hours per day and at least 61 to 76 hours per week. Additionally, during her employment, when a coworker took a week off once a year, Samoylova worked 7 days a week, further increasing her hours worked.

During the winter months, she generally worked 3 to 4 days per week: from 11:00 a.m. to 12:00 a.m., equaling 13-hour days and 39 to 52 hours per week.



3.      Leontyev's Hours

During non-winter months, Leontyev worked 6 days per week: working from 4:00 p.m. to at least 2:00 a.m. or from 5:00 p.m. to at least 3:00 a.m., totaling at least 10 hours per day and 60 hours per week. During his employment, if Defendants were short staffed, he worked 7 days per week, at least 10 hours per day and 70 hours per week. This occurred 4 to 5 weeks a year.

During the winter months, Leontyev worked 4 to 5 days per week: working the opening or closing shifts as needed, totaling at least 10 hours per day and 40 to 50 hours per week. However, these were not all the hours that he worked. He also regularly worked the opening and closing shift on the same day, working as many as 12 to 16 hours per day.

4.      Azov's Hours

Azov generally worked 5 days per week, working 2 days per week from 10:00 a.m. to 1:00 a.m. or 3:00 a.m. and 3 days per week from 3:00 p.m. to 1:00 a.m. or 3:00 a.m., totaling between 10 to 17 hours per day and 60 to 70 hours per week.

C.      Plaintiffs' Payrates and Defendants' Unlawful Wage Practices

1.      Rates of Pay for Raiter, Samoylova and Leontyev

Defendants paid Raiter an hourly rate that increased over the years: $9.50 from May 2015 to mid-April 2016; $14.00 from February 2017 to May 2017; $15.00 from May 2017 to May 2018; $16.00 from May 2018 to May 2019; and $17.00 from May 2019 to the end of her employment.

Defendants paid Samoylova an hourly rate that increased over the years: $9.00 from June 2017 to June 2018; $10.00 from June to October 2018; $11.00 from October 2018 to June 2019; and $14.00 from June to July 2019.

Defendants paid Leontyev an hourly rate that increased over the years: $8.00 from mid-2015 to mid-2016; $9.00 from mid-2016 to mid-2017; $10.00 from mid-2017 to mid-2018; $11.00 from mid-2018 to mid-2019; and $13.00 from mid-2019 to September 2019.

2.      Azov's Lack of Hourly Rate and Gratuities

Defendants failed to pay Azov[1] *any* hourly rate of pay for any of the hours that he worked. His sole compensation was customer gratuities.

3.      Defendants' Policy of Not Paying for All Hours Worked

Defendants had a policy and practice of arbitrarily not paying their employees for all of the hours they worked. For instance, Defendant Milrud refused to pay Leontyev for "working too long" or for tasks that he alleged took too long to perform, regularly deducting 2 hours from his weekly pay. When Leontyev protested and told him that he has

---

[1] Raiter, Samoylova and Leontyev, as a busser, bartender, baristas and cashiers, almost never received tips from customers, most often receiving between $0 to $2.00 per day in tips.





The Honorable Cheryl L. Pollak
July 14, 2022

to be paid for all his hours and the reason he is working long shifts is because the restaurant is understaffed, Defendant Milrud ignored him, refused to hire more staff and continued to deduct hours from his pay.

Defendant Milrud also regularly failed to pay Raiter for all of the hours she worked. She estimates Defendants deduced an average of $125 per paycheck. Like Plaintiff Leontyev, Raiter complained about this to Defendant Milrud and was usually ignored. Defendant Milrud would, however, sometimes admit to deducting her hours and pay her something extra in the weeks she complained. Even with this occasional extra pay, Defendants still did not pay Raiter for all of her hours.

Like others, Samoylova was not paid for multiple hours worked per week. Defendant Milrud yelled and admonished her multiples times for working long shifts and pressured her to write down less hours than she actually worked each day. Fearing she might lose her job, she complied and subtracted about 2 hours per day and 9 hours per week from her actual hours worked.

4.    Unlawful deductions from Azov's pay

If a customer failed to pay their bill, Defendants deducted that customer's bill from Azov's tips. He estimates that each deduction was at least $100.00 per customer bill. This happened at least twice during his employment.

5.    Uniform Violations for Leontyev and Azov

Defendants required Leontyev, Azov and the other servers and bussers to purchase and wear a specific uniform, which includes red or white shirts with the restaurants' logo.[2] They were required to buy the uniforms from Defendants, spending an average of $7.50 per shirt and buying at least 5 shirts per year. But Defendants failed to reimburse them this expense and failed to pay them for the maintenance and cleaning of their uniforms.

6.    Labor Law Notice and Wage Statement Violations

Defendants paid Plaintiffs part in cash and part by check once per week. Defendants failed to provide Plaintiffs with the Notice and Acknowledgment of Payrate and Payday under N.Y. Lab. Law § 195.1 when they were hired or at any point in their employment and did not provide them with an accurate wage statement under N.Y. Lab. Law § 195.3 with any wage payment.

D.    Plaintiffs' Estimated Damages

Based on working those hours and being paid this way, Plaintiffs calculate they are owed the following on their FLSA and Labor Law Claims:

We calculate that Raiter is owed $151,505.42:

---

[2] Raiter and Samoylova did not wear uniforms during their employment.

4



The Honorable Cheryl L. Pollak
July 14, 2022

| Raiter's Labor Law & FLSA Damages | | | | |
|---|---|---|---|---|
| | Unpaid Wages | 9% Interest | Liquidated Damages | Total |
| 2015 | $5,736.00 | $3,613.68 | $5,736.00 | $15,085.68 |
| 2016 | $3,578.00 | $1,932.12 | $3,578.00 | $9,088.12 |
| 2017 | $17,902.00 | $8,055.90 | $17,902.00 | $43,859.90 |
| 2018 | $19,986.00 | $7,194.96 | $19,986.00 | $47,166.96 |
| 2019 | $11,588.00 | $3,128.76 | $11,588.00 | $26,304.76 |
| Totals: | $58,790.00 | $23,925.42 | $58,790.00 | $141,505.42 |
| Labor Law § 195.1 Statutory Penalty | | | $5,000 | |
| Labor Law § 195.3 Statutory Penalty | | | $5,000 | |
| GRAND TOTAL | | | $151,505.42 | |

We calculate that Samoylova is owed $133,269.59:

| Samoylova's Labor Law & FLSA Damages | | | | |
|---|---|---|---|---|
| | Unpaid Wages | 9% Interest | Liquidated Damages | Total |
| 2017 | $12,886.50 | $5,798.93 | $12,886.50 | $31,571.93 |
| 2018 | $26,091.00 | $9,392.76 | $26,091.00 | $61,574.76 |
| 2019 | $13,270.00 | $3,582.90 | $13,270.00 | $30,122.90 |
| Totals: | $52,247.50 | $18,137.43 | $52,247.50 | $123,269.59 |
| Labor Law § 195.1 Statutory Penalty | | | $5,000 | |
| Labor Law § 195.3 Statutory Penalty | | | $5,000 | |
| GRAND TOTAL | | | $133,269.59 | |

We calculate that Leontyev is owed $159,207.68:

| Leontvev's Labor Law & FLSA Damages | | | | |
|---|---|---|---|---|
| | Unpaid Wages | 9% Interest | Liquidated Damages | Total |
| 2015 | $3,978.90 | $2,506.71 | $3,978.90 | $10,464.51 |
| 2016 | $9,628.70 | $5,199.50 | $9,628.70 | $24,456.90 |
| 2017 | $13,010.45 | $5,854.70 | $13,010.45 | $31,875.60 |



The Honorable Cheryl L. Pollak
July 14, 2022

| 2018 | $18,976.20 | $6,831.43 | $18,976.20 | $44,783.83 |
| 2019 | $16,575.70 | $4,475.44 | $16,575.70 | $37,626.84 |
| Totals: | <u>$62,169.95</u> | <u>$24,867.78</u> | <u>$62,169.95</u> | <u>$149,207.68</u> |
| Labor Law § 195.1 Statutory Penalty | | | | $5,000 |
| Labor Law § 195.3 Statutory Penalty | | | | $5,000 |
| GRAND TOTAL | | | | <u>$159,207.68</u> |

We calculate that Azov is owed $35,213.56:

| Azov's Labor Law & FLSA Damages | | | | |
|---|---|---|---|---|
| | Unpaid Wages | 9% Interest | Liquidated Damages | Total |
| 2015 | $10,955.73 | $6,902.11 | $10,955.73 | $28,813.56 |
| Totals: | <u>$10,955.73</u> | <u>$6,902.11</u> | <u>$10,955.73</u> | <u>$28,813.56</u> |
| Labor Law § 195.1 Statutory Penalty | | | | $5,000.00 |
| Labor Law § 195.3 Statutory Penalty | | | | $1,400.00 |
| GRAND TOTAL | | | | <u>$35,213.56</u> |

Excluding liquidated damages and pre-judgment interest, the Plaintiffs' FLSA and Labor Law damages are estimated to be $220,563.

E.    Procedural and Settlement History

On August 5, 2021, Plaintiffs filed their Complaint asserting the following claims: failure to pay minimum wage under the Fair Labor Standards Act and New York Labor Law; failure to pay overtime under the FLSA and Labor Law; failure to pay for all hours worked under the FLSA and Labor Law; failure to pay spread-of-hours pay under the Labor Law; unlawful deductions under the FLSA and Labor Law; failure to reimburse costs of uniforms under the Labor Law; Labor Law record-keeping violations under Labor Law §§ 195.1 and 195.3; and sexual harassment, gender discrimination and hostile work environment under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). On May 23, 2022, the parties participated in a mediation with the well-regarded mediator James A. Brown, at which a resolution was reached. The Agreement was not, however, fully-executed until July 14, 2022.[3]

---

[3] July 14, 2022 Settlement Agreement, Exhibit A.



II.  <u>Summary of Settlement Terms</u>

Plaintiffs have agreed to resolve their FLSA and Labor Law claims for $150,000: $99,148.48 payable to Plaintiffs, split between each Plaintiff in accordance with their claims, with $30,899.93 payable to Raiter, $20,152.13 payable to Samoylova, $39,856.44 payable to Leontyev, $8,239 payable to Azov; $49,574.24 payable to their counsel, Lipsky Lowe, for their fees, equaling one-third of the settlement after expenses, and $1,277.28 for expenses.[4] Payment will be made within 30 days of the Court approving the Agreement, assuming it does. The Agreement contains a release limited to the wage and hour claims.[5]

III.  <u>Defendants' Position and Affirmative Defenses</u>

Defendants deny that they violated the FLSA or NYLL. The Emmons Palace restaurant opened approximately nine years ago. Annual gross revenues did not exceed $500,000 or more until approximately three to four years ago. The restaurant is seasonal, which means it is primarily busy during the summer so staffing is higher in the summer than during the winter months, which tend to be very slow.

During the summary months the restaurant is open from 11:00 a.m. to 1:00 a.m. During the winter it is open from 12 noon to 11pm. The restaurant is open 7 days per week. There are typically two shifts per day ranging between 5-6 hours per shift. Each employee works no more than 5 days a week and no more than one shift on any given day. None of the plaintiffs ever worked more than 40 hours a week at the restaurant.

All of the plaintiffs were part-time employees working no more than 5 or 6 hours per shift and no more than 5 days per week.[6] Defendant Raiter created the schedules for herself, Samoylova and Leontyev. The head server created the schedule for the servers including Azov. Plaintiffs were not required to clock in or out at the start or end of their shifts and timesheets do not exist. Raiter, Samoylova and Leontyev voluntarily quit. Azov simply stopped showing up for work and was terminated.

Raiter, Samoylova and Leontyev were paid a flat rate of $250 a week, plus tips. Raiter and Leontyev were on payroll and paid $250 a week by check. Samoylova, who was "off-the books" was paid $250 per week in cash. Azov, who was only employed by Defendants for a few months, was also "off-the books" and paid in cash. In addition to these weekly payments, Plaintiffs shared the tips with other tipped employees for each day they worked. Only tipped employees shared the tips. At the end of each night, the total gross sales were calculated and 18% of the total gross sales were then split amongst the tipped employees. All tips were paid in cash at the end of each night. Between the $250

---

[4] Settlement Agreement ¶ 4(a)-(d).

[5] *Id.* ¶ 3.

[6] Although Plaintiffs allege that Defendants failed to pay them spread-of-hours pay, Defendants maintain that Plaintiffs did not qualify for spread-of-hours pay because they never worked more than 10 hours on any given day.



The Honorable Cheryl L. Pollak
July 14, 2022

flat rate per week and 18% gratuity paid to Raiter, Samoylova and Leontyev each day they worked, Defendants satisfied the minimum wage threshold for tipped workers.

Only Azov alleges that unlawful deductions were taken from his wages. Defendants deny any unlawful deductions were taken from Azov's or any other employee's wages. Moreover, Azov fails to provide any specifics as to when the unlawful deductions were made or the precise amounts.  Instead, he merely alleges that "*If* a customer failed to pay their bill, Defendants deducted that customer's bill from Plaintiff Azov and other similarly situated servers' tips." (emphasis added). Azov further alleges, in a speculative manner, "that each deduction was at least $100 per customer bill. Defendants deducted wages at least twice from his wages during his employment." However, Azov is unable to state the date, the exact amount and how many times this occurred.

Employees were not required to purchase and clean "uniforms." The alleged uniforms Plaintiffs are referring to are t-shirts, which are provided to employees free-of-charge.  Defendants receive the t-shirts for free from sponsors who include their company logo on the back of the t-shirts.  None of the employees are required to pay out of pocket to clean the t-shirts nor did Defendants deduct any wages from Plaintiffs' pay in order to clean or maintain the t-shirts. Dirty t-shirts are laundered along with restaurant linens at Defendants' sole expense. Any employee can obtain a fresh t-shirt at any time by simply asking for one.  Moreover, the alleged "uniforms" are only t-shirts and if Plaintiffs were spending money to professional dry-clean or launder the t-shirts, which is highly unlikely, they did so unbeknownst to Defendants.

Plaintiffs did not spend more than 20% of their time performing non-tipped services. The owners/managers and/or back of the house employees (i.e., dishwashers) handled the cleaning and garbage for the restaurant. If Plaintiffs rolled silverware, bussed and/or cleaned tables, it was not more than 20% of their time. The primary responsibility of Plaintiffs was to serve customers.

All of Plaintiff Azov's claims are time-barred as his employment was terminated in September 2015.

IV.    **The Settlement Agreement Should Be Approved As It is Fair, Reasonable and Complies with *Cheeks v. Freeport Pancake House, Inc.***

    A.    **The Settlement Agreement is Fair and Reasonable.**

A court should consider the totality of circumstances to determine whether the proposed settlement is fair and reasonable. This includes at least five factors: (1) the complexity, expense and likely duration of litigation; (2) the stage of the proceedings; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of defendants to withstand a larger judgment; and (6) the range of reasonableness in light of the best possible recovery and all the risks of litigation. *Alvarez v. Sterling Portfolio Inv. L.P.*, No. 1:16-cv-5337 (CBA)(VMS), 2017 U.S. Dist. Lexis 206043, at *25 (E.D.N.Y.



The Honorable Cheryl L. Pollak
July 14, 2022

Dec. 13, 2017); *Wolinsky v. Scholastic Inc.*, No. 11-cv-5917 (JMF), 2012 U.S. Dist. LEXIS 93918, at *4-5 (S.D.N.Y. July 5, 2012) (citing Medley v. Am. Cancer Soc., No. 1:10-cv-3214 (BSJ), 2010 U.S. Dist. LEXIS 75098, at *3 (S.D.N.Y. July 23, 2010)).

In considering these factors, courts may enter judgment on a basis that does not require full payment of plaintiff's claims or liquidated damages. This is appropriate where, like here, the defendants could not satisfy a full judgment. *See Sanchez v. Alan's R E 99 Cents & Up Inc.*, No. 1:16-cv-1881 (CBA) (LB), 2018 U.S. Dist. LEXIS 70647, *9 (E.D.N.Y. April 24, 2018) (approving settlement that provides for 20% of the claimed damages based on defendants' financial condition); *Garcia v. Good for Life by 81, Inc.*, No. 17-cv-07228 (BCM), 2018 U.S. Dist. LEXIS 117437, at *6 (S.D.N.Y. July 12, 2018) (approving settlement that provides for less than 100% recovery based on defendant's financial health).

1.    The settlement is reasonable and fair in view of the case's complexity, expense and the duration of the litigation.

While certain parts of this FLSA matter are not highly complex, serious factual questions exist that would require heavy litigation. The parties do not agree on the basic facts, including the hours Plaintiffs worked and the wages they received. While some informal discovery occurred, if this case were to proceed, the parties would need to conduct full discovery, including depositions. This litigation would be costly and time-consuming. This factor favors approval. *See Marshall v. Deutsche Post DHL*, 1:13-cv-1471 (RJD) (JO), 2015 U.S. Dist. Lexis 125869, at *12 (E.D.N.Y. Sept. 21, 2015) (finding that costly litigation favors approving settlement).

2.    The settlement is reasonable and fair considering the stage of the proceedings.

The parties participated in meaningful, informal discovery, allowing them to adequately evaluate the strengths and weaknesses of their respective claims and defenses. This favors approval. *See Alvarez*, 2017 U.S. Dist. Lexis 206043, at *8 (approving settlement where discovery was incomplete but the parties had sufficient information to analyze the case); *Hall v. Prosource Techs., LLC*, No. 1:14-cv-2502 (SIL), 2016 US. Dist. Lexis 53791, at *39 (E.D.N.Y. April 11, 2016) (approving settlement where informal discovery was exchanged sufficient enough the parties had "adequate knowledge of the strengths and weaknesses of their respective claims and defenses").

3.    The settlement is reasonable and fair considering the risks of establishing liability and damages.

The biggest risk in Plaintiffs' case is establishing the hours they worked – a hotly contested issue. Based on the hours Defendants' claim they worked, Plaintiffs would be entitled to a minimum amount of damages. But the settlement avoids this risk. It is accordingly uncertain whether, or how much, they would recover at trial. This factor, therefore, favors approval. *See Marshall*, 2015 U.S. Dist. Lexis 125869, at *13 (explaining because the case was not a "slam dunk" these factors favor approval); *Bodon v. Domino's*



*Pizza, LLC*, No. 1:09-cv-2941 (SLT), 2015 U.S. Dist. Lexis 17358 (E.D.N.Y. Jan. 16, 2015) ("[T]she question [in assessing the fairness of a class action settlement] is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the uncertainties the class faces . . . .").

> 4. The settlement is reasonable and fair considering Defendants' ability to withstand a larger judgment.

Defendants have made explicit representations that they lack the financial resources to pay the total amount of Plaintiffs' claimed damages.[7] This is a meaningful factor in Plaintiffs agreeing to resolve their claims for less than their claimed damages. The settlement, however, remains reasonable considering Defendants' financial condition. *See Sanchez*, 2018 U.S. Dist. LEXIS 70647, *9 (approving settlement that provides for 20% of the claimed damages based on defendants' financial condition).

> 5. The settlement is reasonable and fair considering Plaintiffs' best possible recovery and the litigation risks.

Plaintiffs calculate their total recovery for their wage and hour claims, excluding interest and liquidated damages, to be $220,563. To obtain this, they would have to prove the hours they worked and disprove the hours that Defendants claim they worked. A real likelihood, therefore, exists that they would recover a fraction of the settlement amount for their unpaid wages and statutory penalties. But this settlement provides Plaintiffs with 68% ($150,000/$220,563) of their claimed damages. This range favors approval. *See Alvarez*, 2017 U.S. Dist. Lexis 206043, at * 25. (approving an FLSA settlement where plaintiff's recovery range varied significant on the success of certain defenses).

> B. The Agreement Is the Product of Arm's-Length Settlement Negotiations.

The settlement was reached after the parties exchanged informal discovery and a settlement conference with the well-regarded mediator, James A. Brown. These factors favor approval. *See Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 1:09-cv-486 (ETB), 2012 U.S. Dist. Lexis 144446, at * 7-8 (E.D.N.Y. Oct. 4, 2012) (approving settlement that was reached with a mediator's assistance); *Gomez v. Land Appliance Servs.*, 16-cv-6907 (ENV) (SMG), 2018 U.S. Dist. LEXIS 30762, at *3 (E.D.N.Y. Feb. 23, 2018) (approving settlement mediated by James Brown).

> C. The Agreement Complies with *Cheeks v. Freeport Pancake House*.

In August 2015, the Second Circuit resolved an arguably unsettled issue: parties cannot privately settle FLSA claims without either the approval of the district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The Court also explained in *dicta* when an FLSA settlement is valid. Namely, it questioned the validity of agreements that contain confidentiality provisions, single-sided general releases and attorneys' fees that go beyond a certain percentage. *Id*. None of those issues exist in the Agreement.

---

[7] Settlement Agreement ¶ 4(h).



The Honorable Cheryl L. Pollak
July 14, 2022

    1.    <u>The Agreement complies with *Cheeks* since it is publicly filed.</u>

The Agreement does not contain a confidentiality provision and it is publicly available, having been filed on the CM/ECF system with this motion.[8] This concern thus does not exist, favoring approval.

    2.    <u>The Agreement complies with *Cheeks* since it contains a limited release.</u>

The Agreement's release is limited to the wage and hour claims asserted in this action.[9] This favors approval. *See Gomez v. Midwood Lumber & Millwork, Inc.*, No. 1:17-cv-3064 (KAM)(JO), 2018 U.S. Dist. Lexis 101019, at * 15 (E.D.N.Y. June 17, 2018) (approving settlement agreement when the release was limited to the asserted wage and hour claims); *Wiles v. Logan Staffing Sols. Inc*., No. 18-cv-9953 (RA), 2020 U.S. Dist. LEXIS 36485, at *4 (S.D.N.Y. Mar. 2, 2020). The Parties entered into a separate agreement for Plaintiffs' discrimination and harassment claims that is not being submitted for approval with this motion since it is outside the scope of *Cheeks*. *Seecharan v. Heritage Place LLC*, 2021 U.S. Dist. LEXIS 50188, at *7 (E.D.N.Y. Mar. 15, 2021).

    3.    <u>The Agreement's complies with *Cheeks* since its non-disparagement provision is properly tailored.</u>

The Agreement's non-disparagement language permits Plaintiffs to truthfully discuss with others the facts and claims in this lawsuit.[10] This provision is accordingly consistent with the FLSA's purpose. *See Qiting Yang v. Matsuya Quality Japanese, Inc.*, 1:15-cv-1949 (JS)(ARL), 2017 U.S. Dist. Lexis 14823, *4 (E.D.N.Y. 2017) (explaining a non-disparagement provision, to comply with the FLSA, must permit the employee to discuss with others his or claims and litigation experience.); *Panganiban v. Medex Diagnostic and Treatment Ctr., LLC*, No. 1:15-cv-2588 (AMD)(LB), 2016 U.S. Dist. Lexis 29158, at * 6 (E.D.N.Y. Mar. 7, 2016).

V.    <u>The Court Should Approve Plaintiffs Counsel's Fees and Expenses, As the Amounts Are Reasonable</u>

    A.    <u>Counsel's Fees of One-Third of The Settlement Is Reasonable and Regularly Approved.</u>

Plaintiffs' Counsel shall receive, under the Agreement and subject to the Court's approval, $49,574.24 in fees, which represents one-third of the $150,000.00 settlement, after expenses.[11] Plaintiffs' Counsel seeks one-third in fees also pursuant to the Agreement and their contingency fee agreements with Plaintiffs.[12]

---

[8] *Id*. ¶ 7(a).

[9] *Id*. ¶ 3.

[10] *Id*. ¶ 6(a).

[11] *Id*. ¶ 1(a).

[12] *Id*. ¶ 4(c).



This amount is reasonable as contingency fees of one-third in the FLSA context are routinely approved. *See e.g., Sanchez,* 2018 U.S. Dist. LEXIS 70647, at *13 (E.D.N.Y. Apr. 24, 2018) (approving one-third fee request in FLSA case); *Emiliano Nieto Zepeda v. Baggio, Ltd.*, No. 1:17-cv-2290 (VB), 2017 U.S. Dist. LEXIS 143332, at *2 (S.D.N.Y. Sept. 1, 2017) (approving one-third request fee request). And it remains reasonable for counsel to receive one-third of the fund even when the Plaintiffs are not receiving 100% of their claimed damages. *See Emiliano Nieto Zepeda*, 2017 U.S. Dist. LEXIS 143332, at *2 (approving one-third request when plaintiff is receiving 50% of her claimed damages).

Also, this firm assumed a meaningful financial risk when agreeing to represent Plaintiffs under this contingency fee arrangement. We took on the case with no guarantee if and when there would be a resolution, while investing our time and effort and advancing costs – all with no guarantee of any compensation. Indeed, in unsuccessful cases, this firm does not recover anything despite investing hundreds of hours and thousands in expenses. This assumption of risk is unique to the plaintiffs' bar and further favors approving the one-third contingency fee. *See Garcia*, 2012 U.S. Dist. Lexis 144446, at *20; *Campos v. Goode*, No. 1:10-cv-224 (DF), 2011 U.S. Dist. Lexis 22959, at *19 (S.D.N.Y. March 4, 2011).

      **B.**      Counsel's Fee Request Is Further Reasonable Considering Their Hourly Rates and Hours Expended.

Lipsky Lowe has expended more than 107.75 hours, equaling $35,589.25 in fees: 12.0 hours for Douglas Lipsky (partner) at $450 per hour, totaling $5,400.00; 86.6 hours for Milana Dostanitch (Senior Associate) at $350 per hour, totaling $28,145.00; 6.2 hours for Bayron Flores-Tapia (Junior Associate) at $250 per hour, totaling $1,705.00; and 2.95 hours for CarmenLiggia Espinal (Paralegal) at $115 per hour, totaling $339.25.[13] These hours and rates are reasonable.

      **1.**      Counsel's fee request is reasonable considering the requested hourly rates, their experience and previously approved rates.

Counsel requests a rate of $450 for partner Douglas B. Lipsky, which is reasonable considering his background: he has practiced employment law for 19 years; he is a member of the New York State Bar Association, Wage and Hour Committee; he has presented on numerous issues, including presenting to the New York State Academy of Trial Lawyers on employment law and the FLSA; he was a contributing authority on a treatise on wage and hour litigation, Wage & Hour Collective and Class Litigation, ALM Law Journal Press (2012); prior to founding Lipsky Lowe, he was a Senior Associate at Seyfarth Shaw LLP in its employment practice group, which is consistently ranked as one of the top employment practice groups in the Country. Courts, recognizing this background, have previously approved this rate and higher. *See Heath v. One of Kind Transport Inc, et al.*, 1:21-cv-06920 (BMC) (E.D.N.Y. Mar. 22, 2022) (approving hourly rate of $450 for Douglas Lipsky); *Portillo v. Underhill Food Corp et al*, 1:20-cv-05286 (WFK-JRC)

---

[13] Contemporaneous and near contemporaneous time records, Exhibit B.



The Honorable Cheryl L. Pollak
July 14, 2022

(E.D.N.Y. Nov. 02, 2020); *Kingston v. Buy Buy Baby, Inc.*, Index. 603184/2021 (N.Y. Sup. Nassau Cty) (approving Lipsky's hourly rate of $600).

Furthermore, Courts in this District have approved the rate requested here for attorneys of similar experience in FLSA matters. *See e.g., Dacas v. Duhaney*, No. 17-cv-3568 (EK) (SMG), 2020 U.S. Dist. LEXIS 107943, at *7 (E.D.N.Y. June 18, 2020) ("Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners")*; Hall*, 2016 U.S. Dist. LEXIS 53791 ("Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates and $70 to $100 per hour for paralegals.").

Plaintiffs request an hourly rate of $325 for Milana Dostanitch, which is reasonable considering her background: she is an eighth-year associate who graduated in 2014 from Fordham University School of Law and has practiced exclusively in employment law since graduating; she is an Adjunct Professor at Fordham University School of Law, where she teaches trial preparation and courtroom presentation; and she is a Committee Member of the Labor and Employment Law Committee. Courts in the Eastern District have recently approved her at and near this rate. *See Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, 2022 U.S. Dist. LEXIS 69998, at *9 (E.D.N.Y. Apr. 14, 2022) (approving Ms. Dostanitch's $325 hourly rate); *Gromova v. Orthosnap Corp., et al.*, 2:20-cv-2193 (JMA)(JMW) (E.D.N.Y. Jan. 7, 2022) (approving Ms. Dostanitch's $300 hourly rate). This decision is consistent with what courts have approved for other attorneys with comparable experience. *See Alvarez*, 2017 U.S. Dist. LEXIS 206043, at *21 ("$200-$325 per hour are the reasonable ranges within which junior and senior associates respectively may place their rates in typical FLSA cases").

Plaintiffs request an hourly rate of $275 for Bayron Flores-Tapia. He graduated in 2021 from Fordham University School of Law and has since been working as a first-year associate at Lipsky Lowe. During law school, he interned with the New York Legal Assistant Group's Legal Clinic for Pro Se Litigants at the Southern District of New York, providing direct limited scope legal assistance to federal pro se litigants in matters related to labor and employment. As a first-year associate at Lipsky Lowe, he has worked exclusively on employment law matters. Courts in this District have recently approved his hourly rate of $275. *See Portillo v. Underhill Food Corp et al*, 1:20-cv-05286 (WFK)(JRC) (E.D.N.Y. Nov. 2, 2020) (granting Plaintiff's motion for default judgment in which, for lodestar purposes, Flores-Tapia's hourly rate was $275).

Finally, as to the paralegal on this case, Carmen Espinal, Plaintiffs request an hourly rate of $115. Ms. Espinal graduated with a Master's degree in Public Administration from John Jay College of Criminal Justice is 2013 and a Master's degree in Paralegal Studies from George Washington University in 2017. She has worked as a paralegal since 2013. This rate has recently been approved by Courts in this District. *See Heath v. One of Kind Transport Inc, et al.*, 21-cv-06920 (BMC) (E.D.N.Y. Mar. 22, 2022) (approving hourly rate of $115 for Carmen Espinal as a reasonable hourly rate). Her rate is also consistent



The Honorable Cheryl L. Pollak
July 14, 2022

with rates approved in this District. *See Lazaro v. Best Fish Mkt. Corp.*, 2022 U.S. Dist. LEXIS 17015, at \*5 (E.D.N.Y.  Jan. 29, 2022) (noting that a paralegal rate of $125 was "within the parameters in this district").

> 2.  Counsel's fee request is further reasonable considering they regularly represent clients who pay them rates that are greater than the requested rates.

As the redacted engagement letters confirm, Plaintiffs' Counsel often represents individuals and businesses who pay them hourly rates that exceed the requested rates: clients regularly agree to pay Mr. Lipsky $600 or more per hour, Ms. Dostanitch $375 per hour, and Mr. Flores-Tapia $300 per hour. [14] This further underscores the reasonableness of the requested rate, as it reflects the market rate for an attorney of their experience. *See Anthony v. Franklin First Fin., Ltd.*, No. 09-cv-05578 (BSJ)(RLE), 2012 U.S. Dist. LEXIS 21730, at \*8 (S.D.N.Y. Feb. 16, 2012) (the court "giving significant weight" to redacted engagement letters to approve the requested hourly rates); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) (explaining "the range of rates that plaintiff's counsel actually charge their clients . . . is obviously strong evidence of what the market will bear").

> 3.  Counsel's fee request is further reasonable considering hourly rates are not stagnant.

These rates are further reasonable when considering hourly rates are not stagnant: they generally increase each year, resulting in the market rate for a Senior Associate in 2022 being greater than what it was in 2014. The average attorney hourly rates in New York, in fact, increased by 3% in 2021. [15] It accordingly follows that the hourly rates that were approved in earlier years do not reflect what those rates would be in today's market for someone with the same experience. Putting this in context, the $400 hourly rate that was recognized as reasonable in 2010 for a partner in *Luca v. Cty. of Nassau*, 698 F. Supp. 2d 296, 302 (E.D.N.Y. 2010) would be $544 in today's market. [16] And the $300 hourly rate that was approved for a Senior Associate in 2016 in *Hall v. Prosource Techs., LLC* would be $354 [17] in today's market.

Rates also adjust with inflation. That $400 hourly rate in *Luca*, equals $526 when adjusted for inflation. [18] And that $300 hourly rate in *Hall*, equals $358 when adjusted. [19]

---

[14] Engagement Letters (client names and matters have been redacted), Exhibit C.

[15] https://www.attorneyatwork.com/solo-and-small-firm-lawyer-hourly-rates/

[16] $400 x 1.03^12=$544.

[17] $300 x 1.03^6=$354.

[18] https://www.aier.org/cost-of-living-calculator

[19] *Id.*



4.    Counsel's fees are further reasonable considering the work done on this case and the results achieved.

Before filing the lawsuit, this firm conducted a meaningful investigation of the claims and on Defendants. After filing the lawsuit, the parties engaged in meaningful informal discovery and engaged in significant settlement talks. Through these efforts, this firm secured a settlement that equals almost 70% of Plaintiffs' claimed compensatory damages.

5.    Counsel's fees are further reasonable considering the division of labor between Partner and Associate

Ms. Dostanitch performed the majority of the work on this matter. This case is therefore not the situation where a partner does all of the work and seeks to be compensated for associate-level work. This firm was, rather, able to allocate the most cost efficient resources to this case, while effectively representing the Plaintiffs.

6.    Counsel's fees are further reasonable considering they request a very modest lodestar multiplier.

With a lodestar of $35,589.25 and seeking $49,574.24 in fees, Counsel is requesting a 1.39 lodestar multiplier. This multiplier is reasonable, when measured against what courts have previously approved. *See, e.g., Pucciarelli v. Lakeview Cars, Inc.,* No. 16-cv-4751 (RRM) (RER), 2017 U.S. Dist. LEXIS 98641, at *5 (E.D.N.Y. June 23, 2017) ("Courts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements"); *Hall,* 2016 U.S. Dist. LEXIS 53791 (approving a multiplier of 2.08).

C.    Lipsky Lowe Are Entitled to Their Expenses

Lipsky Lowe is entitled to recover its expenses in additional to its reasonable fees. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1-a), 663. These include reimbursement for, by way of example, filing fees and mediator fee. *See Marquez v. Erenler, Inc.*, No. 12-cv-8580 (GHW), 2014 U.S. Dist. LEXIS 159128, at *9 (S.D.N.Y. Nov. 10, 2014) (awarding filing and transcript fees, and process server expenses); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 624 (S.D.N.Y. 2012) (awarding expenses including filing fees and postage).

Here, Counsel is seeking $1,277.28 in expenses for the filing fee, process server fee, mediator fee, and mailings.[20] Counsel should be reimbursed for them.

---

[20] Expense records, Exhibit D.



The Honorable Cheryl L. Pollak
July 14, 2022

VI.    <u>Conclusion</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the Agreement and award the requested attorneys' fees and expenses.

Respectfully submitted,
LIPSKY LOWE LLP


<u>s/ Milana Dostanitch</u>
Milana Dostanitch


CC:    Defense Counsel (Via ECF)

16

Exhibit A

<u>NON-CONFIDENTIAL SETTLEMENT AGREEMENT AND LIMITED RELEASE</u>

This July 13, 2022 NON-CONFIDENTIAL SETTLEMENT AGREEMENT AND LIMITED RELEASE (the "Agreement") is made and entered into between Plaintiffs Oxana Raiter, Olga Samoylova Iram, Andrey Leontyev and Eugene Azov ("Plaintiffs") and Dessert Palace Bose Inc. d/b/a "Emmons Palace" and "Dessert Palace" and Efim Milrud ("Defendants") (collectively the "Parties").

WHEREAS, on August 5, 2021, Plaintiffs filed a lawsuit in the U.S. District Court for the Eastern District of New York, Index No. 1:21-cv-04410(KAM)(CLP), that asserts Defendants (i) failed to pay them the minimum wage, failed to pay them overtime premium pay, failed to pay for all hours worked, and made unlawful deductions, all of which violate the Fair Labor Standards Act and New York Labor Law, (ii) failed to pay them spread-of-hours pay, violating the Labor Law, (iii) failed to reimburse costs of uniforms and pay the additional required weekly amount for uniform laundering and maintenance, violating the Labor Law, (iv) failed to provide them with the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1, (v) failed to provide them with accurate wage statements required under N.Y. Lab. Law § 195.3, and (vi) subjected Plaintiff Raiter and Samoylova to gender discrimination, sexual harassment, and hostile work environment, violating the New York State Human Rights Law and New York City Human Rights Law (the "Action"); and

WHEREAS, Defendants have alleged in the Action that they lawfully paid Plaintiffs and complied with their FLSA and Labor Law statutory obligations; and

WHEREAS, Defendants deny the allegations and claims that Plaintiffs assert in the Action, have contended that Plaintiffs' allegations are unfounded and lack merit and specifically deny that their conduct was in any way illegal, wrongful or improper; and

WHEREAS, the Parties now wish to amicably resolve the Action and desire to fully and finally resolve and settle in full all claims that Plaintiffs have asserted against Defendants in the Action;

WHEREAS, Plaintiffs' counsel and Defendants' counsel have negotiated extensively in good faith, including participation in Court-ordered mediation, to reach a settlement acceptable to the Parties that constitutes a reasonable compromised of the dispute between the Parties;

NOW, THEREFORE, in considering the mutual promises and covenants contained in this Agreement, the receipt and sufficiency of which are hereby acknowledged, and incorporating the above "Whereas" clauses in the Agreement, the Parties hereby agree as follows:

1.    <u>Dismissal of the Action</u>. Plaintiffs agree to dismiss the Action with prejudice. Plaintiffs agree, in that regard, to take all actions necessary to accomplish the dismissal with prejudice of the Action, including filing a motion with the Court seeking its approval of the Agreement and filing of the Stipulation of Dismissal in the form attached as Exhibit A, executed by counsel, after Defendants have fulfilled their obligations under Paragraph 4 of this Agreement.

2.      Fully-Executed Agreement & Effective Date.

a.      Within 5 calendar days of receiving from Plaintiffs the executed Agreement, Defendants shall provide Plaintiffs the fully-executed Agreement and executed Stipulation of Dismissal (Exhibit A). When providing them the executed Agreement, Plaintiffs shall provide Defendants completed IRS Forms W-9 and W-4 and a Form W-9 completed by Plaintiffs' Counsel, Lipsky Lowe LLP.

b.      This Agreement shall become effective and enforceable once the Parties have executed it and the Court enters its order approving it (the "Effective Date").

3.      Limited Release of Claims. Plaintiffs, for the consideration set forth in this Agreement, which they acknowledge is adequate and satisfactory to them, hereby commit as follows.

Plaintiffs hereby IRREVOCABLY AND UNCONDITIONALLY RELEASE, WAIVE AND FOREVER DISCHARGE Defendants from any and all complaints, charges, causes of action, agreements, promises, liabilities, claims, demands, rights and entitlements of any kind whatsoever, in law or equity, whether known or unknown, asserted or un-asserted, fixed or contingent, apparent or concealed, which Plaintiffs, their heirs, executors, administrators, successors or assigns ever had, now have or hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever existing, arising or occurring at any time on or prior to the date they execute this Agreement in connection with the lawsuit filed by Plaintiffs for not being paid the minimum wage, for not being paid for all hours worked, for not being paid overtime, and for unlawfully making deductions under the FLSA and Labor Law, for not being paid for spread-of-hours, for not being paid for the additional required weekly amount for uniform laundering and maintenance, for Defendants' failure to provide them with the Notice and Acknowledgement of Payrate and Payday and for Defendants' failure to provide them with accurate wage statements under the Labor Law. The released claims, under this paragraph, include all types of relief available for the above-referenced theories of relief, including any claims for unpaid wages, minimum wage, gratuities, unpaid overtime, benefits, pain and suffering, damages, restitution, losses, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive or declaratory relief, chargebacks, liquidated damages or similar relief (the "Released Claims").

4.      Settlement Payment. In consideration for the limited release in Paragraph 3 and the other promises made in this Agreement, Defendants will pay Plaintiffs and Plaintiffs' Counsel the total, gross amount of $150,000.00 (the "Settlement Payment") as follows:

a.      $49,574.24 will be paid to Plaintiffs by four separate checks, under a W-2 for claimed lost wages and subject to applicable taxes and withholdings using the flat 22% federal withholding applicable to supplemental payments such as this, as well as the applicable state and city withholdings, to be reflected on a W-2 statement. This amount will be paid to Plaintiffs as follows: 1) a check in the amount of $15,449.97 payable to "Oxana Raiter," 2) a check in the amount of $10,076.06 payable to "Olga Samoylova Iram," 3) a check in the amount of $19,928.22 payable to "Andrey Leontyev," and 4) a check in the amount of $4,119.99 payable

to "Eugene Azov." All payments to be paid within 30 days of the Agreement's Effective Date (defined in Paragraph 2.b).

      b.     $49,574.24 will be paid to Plaintiffs by four separate checks, all without any withholdings, to be reflected on an IRS form Misc-1099 (with the information in Box 3) for payment of compensatory damages. This amount will be paid to Plaintiffs as follows: 1) a check in the amount of $15,449.97 payable to "Oxana Raiter," 2) a check in the amount of $10,076.06 payable to "Olga Samoylova Iram," 3) a check in the amount of $19,928.22 payable to "Andrey Leontyev," and 4) a check in the amount of $4,119.99 payable to "Eugene Azov." All payments to be paid within 30 days of the Agreement's Effective Date (defined in Paragraph 2.b).

      c.     $50,851.52 will be paid to Lipsky Lowe LLP for Plaintiffs' claimed attorneys' fees and expenses within 30 days of the Agreement's Effective Date (defined in Paragraph 2.b), and the checks being made payable to "Lipsky Lowe LLP."

      d.     The $50,851.52 to be paid to Plaintiffs' Counsel is the total amount in attorneys' fees and expenses Counsel is to be paid under this Agreement except for as provided in Paragraph 13.

      e.     The above payments shall be delivered to Lipsky Lowe LLP, at 420 Lexington Avenue, Suite 1830, New York, New York, 10170-1830, addressed to Douglas B. Lipsky, via an overnight courier (e.g., FedEx).

      f.     Plaintiffs must ensure that any and all tax obligations relating to any untaxed payments made pursuant to this Agreement are properly filed and/or paid. Plaintiffs shall be responsible for the payment of any taxes owed which are not withheld by Defendants from sums paid pursuant to 4(a)-(b). Lipsky Lowe LLP shall be responsible for the payment of any taxes owed which are not withheld by Defendants from sums paid pursuant to 4(c). Plaintiffs shall not be responsible for payment of any taxes from sums received by Lipsky Lowe LLP pursuant to 4(c). In the event that any federal, state or local taxing authority or court determines that taxes, interest and/or penalties are due and owing as a result of any non-payment by Plaintiffs, said taxes, interest, penalties or other liabilities shall be the sole obligation and liability of Plaintiffs, who shall hold harmless, indemnify and Defendants and any other affected released parties.

      g.     Defendants shall send Plaintiffs W-2s and 1099s for sums paid pursuant to 4(a)-(b), respectively, at the appropriate times. Defendants shall send Lipsky Lowe LLP 1099 for any sums paid pursuant to 4(c), at the appropriate times. Defendants shall not issue any 1099s or other forms to Plaintiffs for the amounts paid to Lipsky Lowe LLP pursuant to the 4(c). Plaintiffs shall not be responsible for payment of any taxes from sums received by Lipsky Lowe LLP pursuant to the 4(c) of the Agreement.

h.      Defendants represent they lack the financial resources to pay the total amount of Plaintiffs' claimed damages in the Action, and Defendants acknowledge this was a material factor in Plaintiffs agreeing to the Settlement Payment.

5.      <u>No Pending Claims or Charges</u>.  Plaintiffs represent and warrant that, besides the Action, they have no claim, charge or complaint against Defendants arising out of or relating to their employment with Defendants or their separation from Defendants before any federal, state or local court or agency. Plaintiffs will not file any lawsuit against Defendants in which they assert any of the Released Claims. If any lawsuit is filed on behalf of Plaintiffs for any of the Released Claims, they agree to take all necessary steps to have that lawsuit withdrawn. Plaintiffs further acknowledge that they cannot recover any monetary benefit, damages, or equitable relief with respect to any of the Released Claims through or from any charge filed by them or any action commenced by a third party.

6.      <u>Non-Disparagement and Neutral Job Reference.</u>

a.      Plaintiffs agree that they shall not say or do anything, directly or indirectly, orally or in writing, that may criticize, disparage or reflect adversely on, or encourage any adverse action against Defendants. Plaintiffs are, however, permitted to make truthful statements to third parties about their employment with Defendants and litigating the Action.

b.      Defendants agree that they shall not say or do anything, directly or indirectly, orally or in writing, that may criticize, disparage or reflect adversely on, or encourage any adverse action against Plaintiffs. Defendants agree to instruct their management, including "Chef Lena," not say or do anything, directly or indirectly, orally or in writing, that may criticize, disparage or reflect adversely on, or encourage any adverse action against Plaintiffs. In responding to any inquiries from Plaintiffs' prospective employers or legitimate third-parties, Defendants shall state only Plaintiffs' employment period and position. Plaintiffs shall direct all inquiries to [INSERT NAME OF HR PERSON], at [INSERT EMAIL AND PHONE NUMBER].

7.      <u>Court Approval and Non-Confidentiality of the Agreement.</u>

a.      The Agreement's validity and enforceability is subject to the Court's approval. Accordingly, if for any reason the Court does not approve this Agreement, this Agreement shall be null and void and the Parties will return to the *status quo ante* prior to entering into this Agreement with respect to the Action, as if the Parties had never entered into this Agreement. In such event, the Agreement and all negotiations shall be without prejudice to the rights of any and all Parties to this Agreement, and any evidence relating to the Agreement and all negotiations shall not be admissible or discoverable in the Action or otherwise. If the Court refuses to approve the Agreement, the Parties agree to work in good faith to resolve any issues the Court raises with the Agreement.

b.      The Parties understand and acknowledge that this Agreement will be publicly filed on PACER and its terms are therefore not confidential.

8.      No Admission. Nothing contained in this Agreement, nor its consummation, nor any payments made under it, may be construed or deemed an admission of liability, culpability, negligence, wrongdoing, or as proof of liability of any sort on the part of Defendants, their affiliates, subsidiaries, predecessors, successors, assigns, and any of their respective shareholders, officers, directors, employees, administrators, benefit plans, welfare plans, deferred compensation plans, or long-term incentive plans. Defendants specifically deny any liability and retain any and all defenses to the claims and any other claims arising under or related to any of the allegations in the Action if the Court does not approve the Agreement in its entirety. Plaintiffs acknowledge that this Agreement does not constitute an admission by Defendants of any wrongful action or violation of any federal or state statute, or common law rights, including those relating to the provisions of any law or statute concerning employment actions, or an admission by Defendants that Plaintiffs' claims have merit. In fact, Plaintiffs acknowledge that Defendants explicitly refute and deny any claims of wrongdoing.

9.      Drafting. Each Party acknowledges that they have cooperated fully in drafting and preparing this Agreement, and hence no rule of construction may be used to construe this Agreement against any Party by virtue of that Party's role in drafting this Agreement.

10.     Modification. This Agreement may not be changed orally, and no modification, amendment or waiver of any provision contained in this Agreement, or any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon any party hereto unless made in writing and signed by all Parties.

11.     Integrated Document. This Agreement contains the entire agreement and complete settlement by and among the Parties and supersedes any and all previous agreements of any kind whatsoever between them, whether written or oral, regarding the claims being released in this Agreement. All prior and contemporaneous discussions and negotiations have been and are merged and integrated into, and are superseded by, this Agreement. This is an integrated document.

12.     Severability. The provisions of this Agreement are severable, and if any part of it is found to be unlawful or unenforceable, the other provisions of this Agreement shall remain fully valid and enforceable to the maximum extent consistent with applicable law, except that if Paragraph 3 is invalidated, this Agreement shall be null and void.

13.     Governing Law and Prevailing Party. This Agreement is made and entered into, and shall be subject to, governed by, and interpreted in accordance with the laws of State of New York and shall be fully enforceable in the state or federal courts of that state, without regard to conflicts of law principles. The Parties also consent to the service of process, pleadings, notices or other papers by any method of service approved by the state and/or federal courts in New York. The prevailing party in seeking to enforce the terms of this Agreement, including post-judgment discovery, shall be entitled to its reasonable attorneys' fees and expenses.

14.     Non-assignment. Neither this Agreement nor any portion hereof is assignable. The Parties represent, warrant and covenant that they have not previously assigned or transferred, or purported to assign or transfer, to any individual or entity, any of the rights,

claims, demands or causes of action being released herein, and agree that no such assignment or transfer may occur without a written consent executed by the Parties, and any attempt to do so shall be void.

15.  <u>Notices</u>. Any notices or documents that are contemplated under this Agreement should be directed to the Parties' respective counsel:

| | |
|---|---|
| Douglas Lipsky | Jonathan B. Bruno, Esq. |
| Milana Dostanitch | RIVKIN RADLER LLP |
| LIPSKY LOWE LLP | 477 Madison Avenue |
| 420 Lexington Avenue, Suite 1830 | New York, New York 10022 |
| New York, New York 10170 | 212.455.9554 |
| 212.392.4772 | Jonathan.Bruno@rivkin.com |
| doug@lipskylowe.com | *Defendants' Counsel* |
| milana@lipskylowe.com | |
| *Plaintiffs' Counsel* | |

16.  <u>Authority and Capacity to Bind.</u> By signing this Agreement, each party represents that they are competent to do so, have the authority to be bound under this Agreement, and intend to be bound by its terms.

17.  <u>Copies and Electronically Transmitted Signatures.</u> This Agreement may be executed in counterparts, and each counterpart, when executed, shall have the same effect as a signed original.  Signatures via HelloSign (or a comparable program) and signatures transmitted by email or fax shall be equally effective as delivery of a manually executed counterpart.

18.  <u>Reservation of Jurisdiction.</u> Notwithstanding the dismissal of this Action, the Court shall retain jurisdiction for purposes of interpreting and enforcing the terms of this Agreement.

19.  <u>Voluntary and Knowing Agreement.</u> Plaintiffs acknowledge that they have voluntarily executed this Agreement. Plaintiffs are advised to obtain the advice of any attorney or other representative of their choice, unrelated to Defendants, prior to executing this Agreement. Plaintiffs acknowledge that they have had the opportunity to obtain legal advice prior to executing this Agreement, or that they knowingly and voluntarily have chosen not to do so. Further, Plaintiffs acknowledge that they have a full understanding of this Agreement's terms.

IN WITNESS WHEREOF, THE PARTIES HAVE EXECUTED THIS AGREEMENT AS OF THE DATES INDICATED BELOW.

_____
OXANA RAITER

Dated: _7/14/2022_____


_____
OLGA SAMOYLOVA IRAM

Dated: _____


_____
ANDREY LEONTYEV

Dated: _____


_____
EUGENE AZOV

Dated: _____

DESSERT PALACE BOSE INC.
D/B/A "EMMONS PALACE" AND "DESSERT PALACE"


_____
Efim Milrud (On behalf of Dessert Palace Bose Inc.
d/b/a "Emmons Palace" and "Dessert Palace")

Dated: _____


_____
EFIM MILRUD (In his Individual Capacity)

Dated: _____

IN WITNESS WHEREOF, THE PARTIES HAVE EXECUTED THIS AGREEMENT AS OF THE DATES INDICATED BELOW.


_____

OXANA RAITER


Dated: _____


_____

OLGA SAMOYLOVA IRAM


Dated: _____

_____
ANDREY LEONTYEV


Dated: 7/14/2022
         _____


_____

EUGENE AZOV


Dated: _____

DESSERT PALACE BOSE INC.
D/B/A "EMMONS PALACE" AND "DESSERT PALACE"


_____

Efim Milrud (On behalf of Dessert Palace Bose Inc.
d/b/a "Emmons Palace" and "Dessert Palace")


Dated: _____



_____

EFIM MILRUD (In his Individual Capacity)


Dated: _____

IN WITNESS WHEREOF, THE PARTIES HAVE EXECUTED THIS AGREEMENT AS OF THE DATES INDICATED BELOW.

_____

OXANA RAITER

Dated: _____

_____

OLGA SAMOYLOVA IRAM

Dated: _____

_____

ANDREY LEONTYEV

Dated: _____

_____

EUGENE AZOV

Dated: 7/14/2022 _____

DESSERT PALACE BOSE INC.
D/B/A "EMMONS PALACE" AND "DESSERT PALACE"

_____

Efim Milrud (On behalf of Dessert Palace Bose Inc.
d/b/a "Emmons Palace" and "Dessert Palace")

Dated: _____

_____

EFIM MILRUD (In his Individual Capacity)

Dated: _____

IN WITNESS WHEREOF, THE PARTIES HAVE EXECUTED THIS AGREEMENT AS OF THE DATES INDICATED BELOW.

_____
OXANA RAITER

Dated: _____

_____
OLGA SAMOYLOVA IRAM

Dated: 7/14/2022
_____

_____
ANDREY LEONTYEV

Dated: _____

_____
EUGENE AZOV

Dated: _____

DESSERT PALACE BOSE INC.
D/B/A "EMMONS PALACE" AND "DESSERT PALACE"

_____
Efim Milrud (On behalf of Dessert Palace Bose Inc.
d/b/a "Emmons Palace" and "Dessert Palace")

Dated: _____

_____
EFIM MILRUD (In his Individual Capacity)

Dated: _____

IN WITNESS WHEREOF, THE PARTIES HAVE EXECUTED THIS AGREEMENT AS OF THE DATES INDICATED BELOW.

_____
OXANA RAITER

Dated: _____

_____
OLGA SAMOYLOVA IRAM

Dated: _____

_____
ANDREY LEONTYEV

Dated: _____

_____
EUGENE AZOV

Dated: _____

DESSERT PALACE BOSE INC.
D/B/A "EMMONS PALACE" AND "DESSERT PALACE"

Efim Milrud (On behalf of Dessert Palace Bose Inc.
d/b/a "Emmons Palace" and "Dessert Palace")

Dated: 7/14/22

EFIM MILRUD (In his Individual Capacity)

Dated: 7/14/22

-7-

# EXHIBIT A

DocuSign Envelope ID: C9232F35-0CC6-40E8-B5CA-7E508383B256

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| OXANA RAITER, OLGA SAMOYLOVA IRAM, ANDREY LEONTYEV AND EUGENE AZOV, Individually and on behalf of all other persons similarly situated, | ECF CASE<br><br>No.: 1:21-cv-04410 (KAM)(CLP) |
| Plaintiffs, | |
| v. | |
| DESSERT PALACE BOSE INC. d/b/a "EMMONS PALACE" and "DESSERT PALACE" and EFIM MILRUD, Jointly and Severally, | |
| Defendants. | |

## STIPULATION AND ORDER OF DISMISSAL WITH PREJUDICE

Plaintiffs and Defendants hereby stipulate, pursuant to Fed. R. Civ. P. 41(a)(1)(ii), that this matter is dismissed with prejudice, which each party to bear their on fees, costs and expenses. The parties further stipulate that this Court shall retain jurisdiction to enforce their Settlement Agreement.

Dated: _____ 2022
     New York, New York

Dated: _____ 2022
     New York, New York

_____

Douglas B. Lipsky
Milana Dostanitch
LIPSKY LOWE LLP
420 Lexington Avenue, Suite 1830
New York, New York 10170
doug@lipskylowe.com
milana@lipskylowe.com
212.392.4772
*Attorneys for Plaintiffs*

_____

Jonathan B. Bruno, Esq.
RIVKIN RADLER LLP
477 Madison Avenue, Suite 410
New York, New York 10022
212.455.9554
Jonathan.Bruno@rivkin.com
*Defendants' Counsel*

Exhibit B

# Activities Export

07/14/2022
4:13 PM

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| 05/05/2021 | 🕐 | Correspondence with client about the restaurant receiving the liquor license back and preparing the complaint.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.30h | $325.00 | - | $97.50 |
| 05/10/2021 | 🕐 | Teleconfernece with client about joining of other waiter(s); explained class action mechanism and what next steps would be.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.50h | $325.00 | - | $162.50 |
| 05/14/2021 | 🕐 | Correspondence and Teleconference with client Raiter and potential new plaintiff; performed intake, updated evernote; reviewd retainers; drafted email to D.Lipsly.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.80h | $325.00 | - | $260.00 |
| 05/18/2021 | 🕐 | Correspondence with C.Espinal and D.Lipsky about retainer; correspondence with client Azov about the retainer; obtained signed retainer; correspondence with D.Lupsky about retainer signed.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.50h | $325.00 | - | $162.50 |
| 06/21/2021 | 🕐 | Drafted complaint.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 2.40h | $325.00 | - | $780.00 |
| 07/13/2021 | 🕐 | Teleconference with client Raiter about the complaint.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| | | | | | **107.75h** | | **$0.00**<br>0.00h | **$35,589.25**<br>107.75h |

# Activities Export

07/14/2022
4:13 PM

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| 07/16/2021 | 🕐 | Drafted complaint; teleconferences with four clients scheduled follow up teleconferencew with the clients.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 4.50h | $325.00 | - | $1,462.50 |
| 07/17/2021 | 🕐 | Teleconference with client about case stragegy and the complaint.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.50h | $325.00 | - | $162.50 |
| 07/19/2021 | 🕐 | Teleconference with client Olga Samoylova about hours worked and wages paid and her allegations in the Complaint.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.90h | $325.00 | - | $292.50 |
| 07/19/2021 | 🕐 | Teleconference with client Andrey Leontyev to go over complaint<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.80h | $325.00 | - | $260.00 |
| 07/19/2021 | 🕐 | Drafted complaint<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 1.60h | $325.00 | - | $520.00 |
| 07/19/2021 | 🕐 | Drafted complaint; correspondence with client Oxana Raiter about facts for the complaint on how she was paid and sexual harassment allegations; drafted complaint.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 2.30h | $325.00 | - | $747.50 |
| 07/19/2021 | 🕐 | Correspondence with Andrey Leontyev about sending documents via DropBox.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| | | | | | **107.75h** | | **$0.00**<br>0.00h | **$35,589.25**<br>107.75h |

# Activities Export

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| 07/20/2021 | 🕐 | Correspondence with C.Espinal about documents from A.Leontyev.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 07/20/2021 | 🕐 | Drafted class and collective action complaint with FLSA and Labor law claims and sexual harassment and gender discrimination claims for four plaintiffs.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 5.80h | $325.00 | - | $1,885.00 |
| 07/21/2021 | 🕐 | Correspondence with D. Lipsky about the complaint and sexual harassment allegations; Conduct legal research about sexual harassment and class actions; drafted complaint; correspondence with client Andrey Leontyev and C.Espinal to retrieve documents; teleconference with clients Raiter and Somoylova about the number of women sexually harassed at work.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 2.10h | $325.00 | - | $682.50 |
| 07/21/2021 | 🕐 | Drafted complaint for four plaintiffs and class, collective, subclasses and individual sexual harassment claims. Teleconference with clients, Raiter, Samoylova and Leontyev to verify the facts for complaint.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 5.50h | $325.00 | - | $1,787.50 |
| 07/25/2021 | 🕐 | Revise complaint.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga | Douglas Lipsky | 3.20h | $450.00 | - | $1,440.00 |
| | | | | | **107.75h** | | **$0.00**<br>0.00h | **$35,589.25**<br>107.75h |

# Activities Export

07/14/2022
4:13 PM

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| | | | Iram v. Emmons Place | | | | | |
| 07/27/2021 | 🕐 | Drafted complaint; researched continual violation doctorine under NYSHRL and NYCHRL;correspondence with D.Lipsky about the complaint. ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 3.90h | $325.00 | - | $1,267.50 |
| 07/28/2021 | 🕐 | Correspondence with D.Lipsky about the Complaint. ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 07/28/2021 | 🕐 | Correspondence with clients about dates of sexual harassment. ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 07/29/2021 | 🕐 | Drafted complaint; Conduct legal research continual doctronie. ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.50h | $325.00 | - | $162.50 |
| 07/29/2021 | 🕐 | Correspondence with D. Lipsky about the complaint; Correspondence with four clients about verifying the complaint. ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.50h | $325.00 | - | $162.50 |
| 08/02/2021 | 🕐 | Correspondence with client about complaint review and filing it with the Court. ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 08/02/2021 | 🕐 | Teleconference with client Raiter about filing the compalint. ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| | | | | | **107.75h** 0.00h | | **$0.00** | **$35,589.25** 107.75h |

# Activities Export

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| 08/04/2021 | 🕐 | Followed up with client Raiter about review of complaint.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 08/05/2021 | 🕐 | Teleconference with client Raiter to verify complaint; drafted complaint; correspondence with D.Lipsky about C.Espinal about filing of the complaint.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.40h | $325.00 | - | $130.00 |
| 08/05/2021 | 🕐 | Review summons and civil coversheet; correspondence with C.Espinal about summonses and civil coversheet.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.30h | $325.00 | - | $97.50 |
| 08/24/2021 | 🕐 | Teleconference with client about serving the complaint; correspondence with C.Espinal and D.Lipsky about service of the complaint.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 09/03/2021 | 🕐 | Teleconference with plaintiffs about the complaint.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.40h | $325.00 | - | $130.00 |
| 09/15/2021 | 🕐 | Correspondence with client Raiter about Defendants retaining an attorney; correspondence with C.Espinal about calendaring Defendants' time to respond.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| | | | | | **107.75h** | | **$0.00**<br>0.00h | **$35,589.25**<br>107.75h |

# Activities Export

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| 09/23/2021 | 🕐 | Teleconference with Leyontiv about status of the case <br> 🔵 Unbilled | 01335-Raiter <br> Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | – | $32.50 |
| 10/04/2021 | 🕐 | Review Court Order and docket (0.1); Correspondence with D.Lipsky abotu Rule 26(f) conference (0.1). <br> 🔵 Unbilled | 01335-Raiter <br> Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | – | $65.00 |
| 10/04/2021 | 🕐 | Correspondence with opposing counsel about Rule 26(f) conference. <br> 🔵 Unbilled | 01335-Raiter <br> Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | – | $32.50 |
| 10/15/2021 | 🕐 | Correspondence with C.Espinal about Case Managmenet Plan and upcoming deadlines. <br> 🔵 Unbilled | 01335-Raiter <br> Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | – | $32.50 |
| 10/18/2021 | 🕐 | Correspondence with opposing counsel about rule 26(f) conference. <br> 🔵 Unbilled | 01335-Raiter <br> Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | – | $32.50 |
| 11/01/2021 | 🕐 | Correspondence with opposing counsel about Rule 26(f) conference. <br> 🔵 Unbilled | 01335-Raiter <br> Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | – | $32.50 |
| 11/02/2021 | 🕐 | Review and analyze of judge's individual rules (0.2); draft of proposed scheduling order (0.2); review and analyze docket (0.1); correspondence with D.Lipsky | 01335-Raiter <br> Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.60h | $325.00 | – | $195.00 |
| | | | | | **107.75h** | | **$0.00** <br> 0.00h | **$35,589.25** <br> 107.75h |

# Activities Export

| Date | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| | | about proposed scheduling order (0.1).<br>🔵 Unbilled | | | | | | |
| 11/03/2021 | 🕐 | Correspondence with D.Lipsky and C.Espinal about proposed scheduling order.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 11/03/2021 | 🕐 | Coresspence with D.Lipsky about Rule 26(f) conference.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 11/04/2021 | 🕐 | Prepare for R. 26 conference (.2); R. 26 Conference (.2); revise case management plan and email M Dostanitch on next steps.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Douglas Lipsky | 0.60h | $450.00 | - | $270.00 |
| 11/12/2021 | 🕐 | Correspondence with D.Lipsky about initial disclosures and settlement demand.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 11/29/2021 | 🕐 | Correspondence with D.Lipsky on status of initial disclosures.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 12/17/2021 | 🕐 | Analyze court docket.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 12/22/2021 | 🕐 | Review and analyze scheduling order (0.1); correspondence with B.Tapia about drafting discovery | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.30h | $325.00 | - | $97.50 |
| | | | | | 107.75h | | $0.00<br>0.00h | $35,589.25<br>107.75h |

# Activities Export

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| | | requests (0.2). 🔵 Unbilled | | | | | | |
| 12/22/2021 | 🕐 | Teleconference with client about damage calculations (0.5); performed damage calculations for Raiter (1.5) 🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 2.00h | $325.00 | - | $650.00 |
| 12/23/2021 | 🕐 | Teleconference with client for information for initial disclosures and damages calculations. 🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.90h | $325.00 | - | $292.50 |
| 12/27/2021 | 🕐 | Performed damage calculations. 🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.30h | $325.00 | - | $97.50 |
| 01/04/2022 | 🕐 | Correspondence with B.Tapia about discovery requests and case strategy. 🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 01/05/2022 | 🕐 | Drafted discovery requests for the Corporate Defendant and Individual Defendant 🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Bayron Flores Tapia | 3.20h | $275.00 | - | $880.00 |
| 01/07/2022 | 🕐 | Revise discovery requests. 🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Douglas Lipsky | 1.20h | $450.00 | - | $540.00 |
| 01/18/2022 | 🕐 | Correspondence with C.Espinal about dates due for Discovery Responses. | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| | | | | | **107.75h** | | **$0.00** 0.00h | **$35,589.25** 107.75h |

# Activities Export

07/14/2022
4:13 PM

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| | | 🔵 Unbilled | | | | | | |
| 02/08/2022 | 🕐 | Analyze docket for discovery schedule.<br>🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 02/11/2022 | 🕐 | Correspondence with C.Espinal about discovery.<br>🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 02/14/2022 | 🕐 | Correspondence with clients about responses to discovery requests.<br>🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 02/14/2022 | 🕐 | Scheduled a call with Olga Samoylova to go over interrogatory responses.<br>🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 02/14/2022 | 🕐 | Teleconference and text messages with Plaintiff Samoylova for discovery responses.<br>🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.90h | $325.00 | - | $292.50 |
| 02/14/2022 | 🕐 | Teleconference with Samoylova about discovery responses, interrogatories and document production.<br>🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| 02/14/2022 | 🕐 | Correspondence with Azov about time to talk and discovery documents;<br>🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| | | | | | **107.75h** | | **$0.00** | **$35,589.25** |
| | | | | | | | 0.00h | 107.75h |

# Activities Export

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| 02/14/2022 | 🕐 | Correspondence with Leotyeve about time to talk, interrogatoires and discovery documents;<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| 02/14/2022 | 🕐 | Correspondence with Raiter about time to talk, interrogatories and discovery documents;<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| 02/15/2022 | 🕐 | Teleconference with Plaintiff Azov about interrogatories.<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 02/15/2022 | 🕐 | Correspondence with Plaintiff Azov about document requests<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 02/15/2022 | 🕐 | Teleconference with Plaintiff Leyotev for his responses to interrogatories (0.6); correspondence about document production (0.1).<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.70h | $325.00 | - | $227.50 |
| 02/15/2022 | 🕐 | Teleconference with Plaintiff Azov for his responses to interrogatories (0.5); correspondence about document production (0.1).<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.70h | $325.00 | - | $227.50 |
| 02/15/2022 | 🕐 | Teleconference with Plaintiff Raiter about her responses to interrogatories.<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.30h | $325.00 | - | $97.50 |
| | | | | | **107.75h** | | **$0.00** | **$35,589.25** |
| | | | | | | | 0.00h | 107.75h |

# Activities Export

07/14/2022
4:13 PM

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| 02/17/2022 | 🕐 | Teleconference with Plaintiff Raiter for her discovery responses.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 1.40h | $325.00 | - | $455.00 |
| 02/18/2022 | 🕐 | Correspondence with three plaintiffs about production of documents.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| 02/21/2022 | 🕐 | Correspondence wtih Plaintiff Raiter about discovery responses.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 02/21/2022 | 🕐 | Correspondence with Plaintiff Somoylova about discovery responses.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| 02/22/2022 | 🕐 | Correspondence wtih Plaintiff Raiter about discovery responses.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 02/25/2022 | 🕐 | Review and revise discovery responses.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Douglas Lipsky | 2.30h | $450.00 | - | $1,035.00 |
| 02/25/2022 | 🕐 | Draft discovery requests<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 1.20h | $325.00 | - | $390.00 |
| 02/25/2022 | 🕐 | Correspondence with D.Lipsky about document requets<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.40h | $325.00 | - | $130.00 |
| 02/28/2022 | 🕐 | Damage calculations | 01335-Raiter | Milana | 4.20h | $325.00 | - | $1,365.00 |
| | | | | | **107.75h** | | **$0.00**<br>0.00h | **$35,589.25**<br>107.75h |

# Activities Export

07/14/2022
4:13 PM

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| | | ● Unbilled | Oxana Raiter and Olga Iram v. Emmons Place | Dostanitch | | | | |
| 02/28/2022 | 🕐 | Review, analyze and revise damages calculations.<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Douglas Lipsky | 1.30h | $450.00 | - | $585.00 |
| 03/04/2022 | 🕐 | Review and revise damage calculations.<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Douglas Lipsky | 1.20h | $450.00 | - | $540.00 |
| 03/04/2022 | 🕐 | Prepare and attend status conference.<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Douglas Lipsky | 0.30h | $450.00 | - | $135.00 |
| 03/04/2022 | 🕐 | Reviewing of Court Order and Communicating with Attorneys re Order<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Carmenliggia Espinal | 0.17h | $115.00 | - | $19.55 |
| 03/07/2022 | 🕐 | Updating of Discovery<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Carmenliggia Espinal | 0.14h | $115.00 | - | $16.10 |
| 03/07/2022 | 🕐 | Draft initial disclosures (1.8); correspondence with Plaintiffs for initial dislosures (0.2)<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 2.00h | $325.00 | - | $650.00 |
| 03/07/2022 | 🕐 | Correspondence with D.Lipsky about Defendants' discovery responses being untimely<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 03/07/2022 | 🕐 | Draft initial disclosures. | 01335-Raiter | Milana | 1.70h | $325.00 | - | $552.50 |
| | | | | | **107.75h** | | **$0.00**<br>0.00h | **$35,589.25**<br>107.75h |

12/20

# Activities Export

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| | | 🔵 Unbilled | Oxana Raiter and Olga Iram v. Emmons Place | Dostanitch | | | | |
| 03/08/2022 | 🕐 | Draft initial disclosures (0.2); correspondence with opposing counsel (0.1); correspondence with D.Lipsky about settlement demand (0.1). 🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.40h | $325.00 | - | $130.00 |
| 03/09/2022 | 🕐 | Updating of Discovery 🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Carmenliggia Espinal | 0.14h | $115.00 | - | $16.10 |
| 03/09/2022 | 🕐 | Updating of Discovery 🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Carmenliggia Espinal | 0.21h | $115.00 | - | $24.15 |
| 03/10/2022 | 🕐 | Correspondence with D.Lipsky about selection of mediator. 🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 03/10/2022 | 🕐 | Review potential mediators. 🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Douglas Lipsky | 0.80h | $450.00 | - | $360.00 |
| 03/15/2022 | 🕐 | Correspondence with mediator about his availability. 🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| 03/15/2022 | 🕐 | Correspodnence with D.Lipsky and C.Espinal about mediation stipulation. 🔵 Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| | | | | | **107.75h** | | **$0.00** 0.00h | **$35,589.25** 107.75h |

# Activities Export

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|--------|------|-------------|--------|------|-----|----------|------------------|--------------|
| 03/15/2022 | 🕐 | Correspondence with the mediator about mediation dates.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 03/16/2022 | 🕐 | Teleconference with mediator Jim Brown about mediation dates.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| 03/16/2022 | 🕐 | Correspodnence with D.Lipsky about mediation dates; correspondence with opposing counsel about mediation dates.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| 03/17/2022 | 🕐 | Updating of Discovery re Defendants Answers to Interrogatories<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Carmenliggia Espinal | 0.13h | $115.00 | - | $14.95 |
| 03/17/2022 | 🕐 | Correspondence with D.Lipsky about mediation date and discovery deadlines.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| 03/17/2022 | 🕐 | Correspondence with opposing counsel about mediation dates.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 03/21/2022 | 🕐 | Correspondence with D.Lispky about mediation dates.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 03/21/2022 | 🕐 | Correspondence with clients about mediation dates.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| | | | | | **107.75h** | | **$0.00**<br>0.00h | **$35,589.25**<br>107.75h |

# Activities Export

07/14/2022
4:13 PM

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| 03/23/2022 | 🕐 | Correspondence and telephone call with client Samoylova about date of mediation.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 03/23/2022 | 🕐 | Correspondence with mediator about date of mediation.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 03/23/2022 | 🕐 | Reviewing of Email re Mediation and Communication with Attorneys re Mediation<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Carmenliggia Espinal | 0.20h | $115.00 | - | $23.00 |
| 04/04/2022 | 🕐 | Review discovery production.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.30h | $325.00 | - | $97.50 |
| 04/12/2022 | 🕐 | Correspondence with D.Lipsky about mediation dates<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| 04/12/2022 | 🕐 | Correspondence with D.Lipsky about mediation dates (0.1); correspondence with opposing counsel and mediator about mediation dates (0.1).<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| 04/13/2022 | 🕐 | Correspondence with clients about mediation dates (0.1); correspondence with mediator and opposing counsel about mediation dates (0.1).<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| | | | | | **107.75h** | | **$0.00**<br>0.00h | **$35,589.25**<br>107.75h |

# Activities Export

| Date | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| 04/13/2022 | 🕐 | Teleconference with client Raiter about the mediation process.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.30h | $325.00 | - | $97.50 |
| 04/13/2022 | 🕐 | Correspondence with C.Espinal about dates of mediation.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 04/13/2022 | 🕐 | Reviewing of Email and Updating of Schedule / Communicating w/ Attorneys<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Carmenliggia Espinal | 0.12h | $115.00 | - | $13.80 |
| 04/15/2022 | 🕐 | Correspondence with clients about mediation<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 05/02/2022 | 🕐 | Defendants' document review<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| 05/05/2022 | 🕐 | Review document production; correspondence with D.Lipsky about deficiency letter<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| 05/11/2022 | 🕐 | Correspondence with clients about mediation preparation, explained the process to the clients.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.30h | $325.00 | - | $97.50 |
| 05/16/2022 | 🕐 | Teleconference with Oxana Raiter about upcoming mediation<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.30h | $325.00 | - | $97.50 |
| | | | | | **107.75h** | | **$0.00**<br>0.00h | **$35,589.25**<br>107.75h |

# Activities Export

07/14/2022
4:13 PM

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| 05/16/2022 | 🕐 | Draft mediation statement<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga<br>Iram v. Emmons Place | Milana<br>Dostanitch | 2.40h | $325.00 | - | $780.00 |
| 05/17/2022 | 🕐 | Teleconference with Azov about<br>mediation preparation<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga<br>Iram v. Emmons Place | Milana<br>Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 05/18/2022 | 🕐 | Mediation preparation for 4<br>plaintiffs<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga<br>Iram v. Emmons Place | Milana<br>Dostanitch | 1.40h | $325.00 | - | $455.00 |
| 05/18/2022 | 🕐 | Draft mediation statement and<br>damages<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga<br>Iram v. Emmons Place | Milana<br>Dostanitch | 4.10h | $325.00 | - | $1,332.50 |
| 05/19/2022 | 🕐 | Draft settlement agreement<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga<br>Iram v. Emmons Place | Milana<br>Dostanitch | 7.50h | $325.00 | - | $2,437.50 |
| 05/19/2022 | 🕐 | Draft mediation statement (0.9);<br>Draft excel damages (1);<br>correspondence with mediator<br>(0.2)<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga<br>Iram v. Emmons Place | Milana<br>Dostanitch | 2.10h | $325.00 | - | $682.50 |
| 05/23/2022 | 🕐 | Drafting of Stipulation re Mediation<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga<br>Iram v. Emmons Place | Carmenliggia<br>Espinal | 0.22h | $115.00 | - | $25.30 |
| 05/23/2022 | 🕐 | Updating of Discovery re Mediation<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga<br>Iram v. Emmons Place | Carmenliggia<br>Espinal | 0.45h | $115.00 | - | $51.75 |
| 05/23/2022 | 🕐 | Updating of Discovery re Mediation<br>Agreement | 01335-Raiter<br>Oxana Raiter and Olga | Carmenliggia<br>Espinal | 0.11h | $115.00 | - | $12.65 |
| | | | | | **107.75h** | | **$0.00**<br>0.00h | **$35,589.25**<br>107.75h |

17/20

# Activities Export

07/14/2022
4:13 PM

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| | | ● Unbilled | Iram v. Emmons Place | | | | | |
| 05/24/2022 | 🕐 | Reviewing of Court's Order and Communicating with Attorneys ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Carmenliggia Espinal | 0.22h | $115.00 | - | $25.30 |
| 05/24/2022 | 🕐 | Correspondence with clients about tax documents ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 05/24/2022 | 🕐 | Reviewing of Court's Order and Communicating with Attorneys ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Carmenliggia Espinal | 0.16h | $115.00 | - | $18.40 |
| 05/25/2022 | 🕐 | Correspondence with clients about tax forms ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| 05/31/2022 | 🕐 | Updating of Discovery ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Carmenliggia Espinal | 0.24h | $115.00 | - | $27.60 |
| 05/31/2022 | 🕐 | Review of Court's Order and Communicating w/ Attorneys ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Carmenliggia Espinal | 0.14h | $115.00 | - | $16.10 |
| 06/02/2022 | 🕐 | Review of docket and deadlines re cheeks motion. ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| 06/13/2022 | 🕐 | Correspondence with C.Espinal about filing letter motion with the Court ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.10h | $325.00 | - | $32.50 |
| | | | | | **107.75h** | | **$0.00** 0.00h | **$35,589.25** 107.75h |

# Activities Export

07/14/2022
4:13 PM

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| 06/13/2022 | 🕐 | Finalizing of Letter Motion w/ Court ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Carmenliggia Espinal | 0.16h | $115.00 | - | $18.40 |
| 06/13/2022 | 🕐 | Reviewing of Court's Order and Communicating w/ Attorneys ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Carmenliggia Espinal | 0.14h | $115.00 | - | $16.10 |
| 06/27/2022 | 🕐 | Correspondence with B.Tapia about drafting settlement agreements. ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| 06/29/2022 | 🕐 | Draft FLSA settlement agreements and non-FLSA agreements. ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Bayron Flores Tapia | 2.80h | $275.00 | - | $770.00 |
| 06/29/2022 | 🕐 | Email correspondence with M. Dostanitch regarding FLSA settlement agreements and non-FLSA settlement agreements. ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Bayron Flores Tapia | 0.20h | $275.00 | - | $55.00 |
| 07/05/2022 | 🕐 | Draft settlement agreements for four Plaintiffs ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 1.70h | $325.00 | - | $552.50 |
| 07/06/2022 | 🕐 | Draft settlement agrements ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.50h | $325.00 | - | $162.50 |
| 07/09/2022 | 🕐 | Review and revise Cheeks motion ● Unbilled | 01335-Raiter Oxana Raiter and Olga Iram v. Emmons Place | Douglas Lipsky | 1.10h | $450.00 | - | $495.00 |
| | | | | | **107.75h** | | **$0.00** 0.00h | **$35,589.25** 107.75h |

# Activities Export

07/14/2022
4:13 PM

| Date ▲ | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| 07/12/2022 | 🕐 | Teleconference with Plaintiff Azov about tax documents and the settlement agreement.<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| 07/13/2022 | 🕐 | Draft settlement agreements (0.5); correspondence with opposing counsel about settlement agreements (0.2); correspondence with Plaintiff about signature of the settlement agreements (0.6)<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 1.30h | $325.00 | - | $422.50 |
| 07/13/2022 | 🕐 | Teleconference with opposing counsel about settlement agreement (0.2)<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.20h | $325.00 | - | $65.00 |
| 07/13/2022 | 🕐 | Draft motion for settlement approval<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.50h | $325.00 | - | $162.50 |
| 07/13/2022 | 🕐 | Teleconferences with plaintiffs about the settlement agreements and motion for settlement approval<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 1.10h | $325.00 | - | $357.50 |
| 07/13/2022 | 🕐 | Draft settlement agreements<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 1.30h | $325.00 | - | $422.50 |
| 07/14/2022 | 🕐 | Draft motion for settlement approval<br>🔵 Unbilled | 01335-Raiter<br>Oxana Raiter and Olga Iram v. Emmons Place | Milana Dostanitch | 0.30h | $325.00 | - | $97.50 |
| | | | | | 107.75h | | $0.00<br>0.00h | $35,589.25<br>107.75h |

Exhibit C

DocuSign Envelope ID: 11A9D7E2-F9C4-48C8-9D06-03314E80647F



Douglas B. Lipsky

420 Lexington Avenue, Suite 1830
New York, New York 10170
Main:  212.392.4772
Direct:  212.444.1024
Fax:  212.444.1030
doug@lipskylowe.com

www.lipskylowe.com

July 9, 2021



VIA EMAIL ( ▮▮▮▮▮▮▮▮▮▮▮ & DOCUSIGN

Re:      Engagement Letter Agreement

Dear ▮▮▮▮▮▮

Thank you for selecting Lipsky Lowe LLP to represent ▮▮▮▮▮▮▮▮▮▮ This Engagement Letter Agreement confirms the terms of our attorney-client relationship, subject to our duties of professional responsibility.

1.      Scope of Engagement.  You have retained the Firm to represent ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "Matter"). The terms of this Agreement will govern any subsequent matters for which you retain the Firm, unless otherwise communicated.

2.      Fees, Costs and Billing.

The fees and costs for the Matter are unpredictable. Any fees and costs we might have previously discussed are therefore only estimates.

a.      It is agreed that you will compensate us for services based on the time devoted to the Matter at the hourly rates this Firm charges: my hourly rate is $600; Milana Dostanich and Sara Isaacson's (Senior Associates) rate is $375; Alfons D'Auria's (Junior Associate) rate is $300; and our paralegal's rate is $115. We will advise you prior to any rate changes. We will bill you for support services, such as postage and filing fees.

b.      Invoices are normally sent to you each month and reflect the services and costs incurred the previous month. Payment is due promptly upon receipt. We are entitled to assess a late charge of 2.0% per month on any outstanding balance older than 60 calendar days.

Initial Here: _____▮▮▮▮▮_____

DocuSign Envelope ID: 11A9D7E2-F9C4-48C8-9D06-03314E80647F



July 9, 2021
Page 2 of 4

3.    Replenishing Retainer.  The Firm's representation will commence when we receive a $10,000 retainer. These funds will be deposited in our client trust account, and we will draw against these funds to satisfy our monthly invoices, copies of which will be sent to you for your information. Upon depleting all or any portion of the retainer, we will so advise you, and you agree to pay any and all amounts you owe that are in excess of the depleted retainer (if applicable) and to restore the retainer to the amount provided hereinabove.

4.    Termination of Representation.

a.    Either of us may terminate this Agreement at any time for any reason by written notice (including by email). The Firm is subject to applicable rules of professional conduct when terminating a client engagement. If we terminate the engagement, the Firm will take all reasonable and practical steps to protect your interests in the Matter and, at your request, suggest possible new counsel.

b.    Subject to the applicable rules of professional conduct, if you terminate this Agreement prior to the matter being resolved, you remain responsible for fees and costs to date in the matter.

5.    Authority to Bind.  By signing this Agreement, you are confirming you have the authority to bind LMD Residential, Inc. to the terms of this Agreement.

6.    Disposition of Files and Records.  We will retain our own files pertaining to the Matter, including material prepared by or for the internal use of our attorneys. The Firm has internal policies that determine the retention periods for closed files. You understand and acknowledge that the Firm utilizes Internet cloud-based methods of document storage and related systems (*e.g.*, Dropbox), and you hereby agree that such methods are acceptable to you, and you disclaim any rights or remedies you may have with respect to any failure of such methods not due to the negligence or misconduct of the Firm.

7.    Communication.  Either at the beginning or during representation, we might express opinions or beliefs concerning the Matter and the results that might be anticipated. Any such statement made by us is an expression of opinion only; it is not a promise or guarantee of results.

8.    Statement of Client's Rights and Responsibilities (Enclosures).  Enclosed with this Agreement are the Statement of Client's Rights and Statement of Client's Responsibilities. All New York-based attorneys are legally required to provide these documents to their clients.

Initial Here: 

DocuSign Envelope ID: 11A9D7E2-F9C4-48C8-9D06-03314E80647F





July 9, 2021
Page 3 of 4

9.    <u>Arbitration</u>

Any dispute over fees and/or costs (a "Dispute") will be submitted to and settled exclusively by binding arbitration, in accordance with the provisions of this Paragraph, subject only to any applicable requirement of law that the parties engage in a preliminary non-binding mediation or arbitration regarding fee disputes. Binding arbitration shall be conducted in accordance with the Judicial Arbitration and Mediation Service Streamlined Rules & Procedures (the "JAMS Rules") and governed under New York law. Arbitration shall be held in the County of New York, Borough of Manhattan, before an arbitrator selected pursuant to the JAMS Rules who will have no personal or pecuniary interest, either directly or indirectly, from any business or family relationship with either of the parties. All decisions of the arbitrator will be final, binding, and conclusive on the parties.

The parties will equally share the costs of the arbitrator and the arbitration fee (if any). Each party will bear that party's own attorneys' fees and costs, and the prevailing party will not be entitled to reimbursement by the other party of any of its fees or costs incurred in connection with the arbitration hereunder, regardless of any rule to the contrary in the applicable arbitration rules. Either party may seek confirmation of the arbitration award in the Supreme Court of the State of New York in New York County, and each party hereby consents to the exclusive jurisdiction and venue of the Supreme Court of the State of New York, in New York County in any claim or action arising hereunder. By signing this Agreement containing this provision, you agree to waive any and all rights to a jury trial regarding any Dispute. You also waive your rights under Part 137 of the Rules of the Chief Administrator of the Courts of New York to mediate and/or arbitrate any fee dispute if the fee is between $1,000 and $50,000 and to commence an action for review in a court of competent jurisdiction if the award aggrieves you.

By entering into agreements that require arbitration as the way to resolve fee disputes, you give up (i.e., waive) your right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration.

Initial Her

DocuSign Envelope ID: 11A9D7E2-F9C4-48C8-9D06-03314E80647F





July 9, 2021
Page 4 of 4

        Please confirm your approval of this Agreement by returning to us a signed and initialed copy via DocuSign. If you have any questions, or if this Agreement does not accurately set forth our arrangement, please let me know.

        Very truly yours,
        LIPSKY LOWE LLP


        <u>s/ Douglas B. Lipsky</u>
        Douglas B. Lipsky

Enclosures


AGREED AND ACCEPTED:

7/9/2021
_____
(Date)

Initial Here: _____



Douglas B. Lipsky

420 Lexington Avenue, Suite 1830
New York, New York 10170
Main:  212.392.4772
Direct:  212.444.1024
Fax:  212.444.1030
doug@lipskylowe.com

www.lipskylowe.com

July 21, 2020

<u>VIA EMAIL</u>



Re:    <u>Engagement Letter Agreement</u>

Dear Thomas and Charles:

Thank you for selecting Lipsky Lowe LLP to represen████████████████and you. This Engagement Letter Agreement confirms the terms of our attorney-client relationship.

1.    <u>Scope of Engagement.</u>   You have retained the Firm to represent ████ ████████████████████████████████████████████████ ██████████████ (the "Matter"). The Firm's primary role in the Matter is to serve as local counsel. The terms of this Agreement will govern any subsequent matters for which you retain the Firm, unless otherwise communicated.

2.    <u>Fees, Costs and Billing.</u>

The fees and costs for the Matter are unpredictable. Any fees and costs we might have previously discussed are therefore only estimates.

a.    It is agreed that you will compensate us for services based on the time devoted to the Matter at the hourly rates this Firm charges: my hourly rate is $650; Milana Dostanich and Sara Isaacson's (Associates) is $375; and Lynette Garcia's (Paralegal) rate is $85. These rates may change from time-to-time. We will advise you prior to any rate changes. We will bill you for support services, such as postage and messenger service.

b.    Invoices are normally sent to you each month and reflect the services and costs incurred the previous month. Payment is due promptly upon receipt.

Initial Here:  ████████ _____



July 21, 2020
Page 2 of 4

We are entitled to assess a late charge of 2.0% per month on any outstanding balance older than 60 calendar days.

3.    Replenishing Retainer.  The Firm's representation will commence when we receive a $5,000 retainer. These funds will be deposited in our client trust account, and we will draw against these funds to satisfy our monthly invoices, copies of which will be sent to you for your information. Upon depleting all or any portion of the retainer, we will so advise you, and you agree to pay any and all amounts you owe that are in excess of the depleted retainer (if applicable) and to restore the retainer to the amount provided hereinabove.

4.    Termination of Representation.

a.    Either of us may terminate this Agreement at any time for any reason by written notice (including by email). The Firm is subject to applicable rules of professional conduct when terminating a client engagement. If we terminate the engagement, the Firm will take all reasonable and practical steps to protect your interests in the Matter and, at your request, suggest possible new counsel.

b.    Subject to the applicable rules of professional conduct, if you terminate this Agreement prior to the matter being resolved, you remain responsible for fees and costs to date in the matter.

c.    Authority to Bind.  By signing this Agreement, you are confirming you have the authority to bind Kokua to the terms of this Agreement.

5.    Disposition of Files and Records.  We will retain our own files pertaining to the Matter, including material prepared by or for the internal use of our attorneys. The Firm has internal policies that determine the retention periods for closed files. You understand and acknowledge that the Firm utilizes Internet cloud-based methods of document storage and related systems (*e.g.*, Dropbox), and you hereby agree that such methods are acceptable to you, and you disclaim any rights or remedies you may have with respect to any failure of such methods not due to the negligence or misconduct of the Firm.

6.    Communication.  Either at the beginning or during representation, we might express opinions or beliefs concerning the Matter and the results that might be anticipated. Any such statement made by us is an expression of opinion only; it is not a promise or guarantee of results.

7.    Statement of Client's Rights and Responsibilities (Enclosures).  Enclosed with this Agreement are the Statement of Client's Rights and Statement of Client's Responsibilities. All New York-based attorneys are legally required to provide these documents to their clients.

Initial Here: _____



8.    <u>Arbitration</u>

Any dispute over fees and/or costs (a "Dispute") will be submitted to and settled exclusively by binding arbitration, in accordance with the provisions of this Paragraph, subject only to any applicable requirement of law that the parties engage in a preliminary non-binding mediation or arbitration regarding fee disputes. Binding arbitration shall be conducted in accordance with the Judicial Arbitration and Mediation Service Streamlined Rules & Procedures (the "JAMS Rules") and governed under New York law. Arbitration shall be held in the County of New York, Borough of Manhattan, before an arbitrator selected pursuant to the JAMS Rules who will have no personal or pecuniary interest, either directly or indirectly, from any business or family relationship with either of the parties. All decisions of the arbitrator will be final, binding, and conclusive on the parties.

The parties will equally share the costs of the arbitrator and the arbitration fee (if any). Each party will bear that party's own attorneys' fees and costs, and the prevailing party will not be entitled to reimbursement by the other party of any of its fees or costs incurred in connection with the arbitration hereunder, regardless of any rule to the contrary in the applicable arbitration rules. Either party may seek confirmation of the arbitration award in the Supreme Court of the State of New York in New York County, and each party hereby consents to the exclusive jurisdiction and venue of the Supreme Court of the State of New York, in New York County in any claim or action arising hereunder. By signing this Agreement containing this provision, you agree to waive any and all rights to a jury trial regarding any Dispute. You also waive your rights under Part 137 of the Rules of the Chief Administrator of the Courts of New York to mediate and/or arbitrate any fee dispute if the fee is between $1,000 and $50,000 and to commence an action for review in a court of competent jurisdiction if the award aggrieves you.

By entering into agreements that require arbitration as the way to resolve fee disputes, you give up (i.e., waive) your right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration.

Initial Here: _____





July 21, 2020
Page 4 of 4

Please confirm your approval of this Agreement by returning to us a signed and initialed copy. If you have any questions, or if this Agreement does not accurately set forth our arrangement, please let me know.

Very truly yours,
LIPSKY LOWE LLP


s/ Douglas B. Lipsky
Douglas B. Lipsky

Enclosures


AGREED AND ACCEPTED:

███████████████████████████████

7/27/2020
(Date)


AGREED AND ACCEPTED:

███████████████████████████████

7/27/2020
(Date)


Initial Here: _____

DocuSign Envelope ID: DF19F3DA-CBFD-49FE-AEEA-E718A5B58AA7



Douglas B. Lipsky

420 Lexington Avenue, Suite 1830
New York, New York 10170
Main:  212.392.4772
Direct:  212.444.1024
Fax:  212.444.1030
doug@lipskylowe.com

www.lipskylowe.com

September 26, 2019

<u>VIA DOCUSIGN & EMAIL</u>

Re:    Engagement Letter Agreement

Dear ███:

  Thank you for selecting Lipsky Lowe LLP to represent you. This Engagement Letter Agreement ("Agreement") confirms the terms of our attorney-client relationship.

  1. Scope of Engagement.  You have retained the Firm to ███████ (the "Matter").

  2. <u>Fees, Costs and Billing.</u>  The fees and costs for the Matter are unpredictable. Any fees and costs we might have previously discussed are therefore only estimates.

  a. It is agreed that you will compensate us for services based on the time devoted to the Matter at the hourly rates this Firm charges: my hourly rate is $650; Sara Issacson's (Associate) is $350; and our paralegal's rate is $85. These rates may change from time-to-time. We will advise you prior to any rate changes. I will have primary responsibility for your matter.

  b. We will bill you for support services, such as postage and messenger service. Invoices are normally sent to you each month and reflect the services and costs incurred the previous month. Payment is due promptly upon receipt. We are entitled to assess a late charge of 2.0% per month on any outstanding balance older than 60 calendar days.

  3. <u>Termination of Representation</u>

  a. Either of us may terminate this Agreement at any time for any reason by written notice (including by email). The Firm is subject to applicable rules of professional conduct when terminating a client engagement. If we terminate the

Initial Here: ███████

DocuSign Envelope ID: DF19F3DA-CBFD-49FE-AEEA-E718A5B58AA7





September 26, 2019
Page 2 of 3

engagement, the Firm will take all reasonable and practical steps to protect your interests in the Matter and, at your request, suggest possible new counsel.

b.    Subject to the applicable rules of professional conduct, if you or the Firm terminate this Agreement prior to the Matter being resolved, you remain responsible for fees and costs to date.

4.    <u>Disposition of Files and Cloud-Based Storage</u>

a.    We will retain our own files pertaining to the Matter, including material prepared by or for the internal use of our attorneys. The Firm has internal policies that determine the retention periods for closed files.

b.    You understand and acknowledge that the Firm utilizes Internet cloud-based methods of document storage and related systems (*e.g.*, Dropbox), and you hereby agree that such methods are acceptable to you, and you disclaim any rights or remedies you may have with respect to any failure of such methods not due to the negligence or misconduct of the Firm.

5.    <u>Communication.</u>  Either at the beginning or during representation, we might express opinions or beliefs concerning the Matter and the results that might be anticipated. Any such statement made by us is an expression of opinion only; it is not a promise or guarantee of results. Also, by signing this, you are consenting to this Firm emailing you future marketing materials.

6.    <u>Statement of Client's Rights and Responsibilities (Enclosures).</u>  Enclosed with this Agreement are the Statement of Client's Rights and Statement of Client's Responsibilities. All New York-based attorneys are legally required to provide these documents to their clients.

7.    <u>Arbitration.</u>  Any dispute over fees and/or costs (a "Dispute") will be submitted to and settled exclusively by binding arbitration, in accordance with the provisions of this Paragraph, subject only to any applicable requirement of law that the parties engage in a preliminary non-binding mediation or arbitration regarding fee disputes. Binding arbitration shall be conducted in accordance with the Judicial Arbitration and Mediation Service Streamlined Rules & Procedures (the "JAMS Rules") and governed under New York law. Arbitration shall be held in the County of New York, Borough of Manhattan, before an arbitrator selected pursuant to the JAMS Rules who will have no personal or pecuniary interest, either directly or indirectly, from any business or family relationship with either of the parties. All decisions of the arbitrator will be final, binding, and conclusive on the parties.

The parties will equally share the costs of the arbitrator and the arbitration fee (if any). Each party will bear that party's own attorneys' fees and costs, and the prevailing party will not be entitled to reimbursement by the other party of a___ f___ o___ costs

Initial Here ███████████

DocuSign Envelope ID: DF19F3DA-CBFD-49FE-AEEA-E718A5B58AA7





September 26, 2019
Page 3 of 3

incurred in connection with the arbitration hereunder, regardless of any rule to the contrary in the applicable arbitration rules. Either party may seek confirmation of the arbitration award in the Supreme Court of the State of New York in New York County, and each party hereby consents to the exclusive jurisdiction and venue of the Supreme Court of the State of New York, in New York County in any claim or action arising hereunder. By signing this Agreement containing this provision, you agree to waive any and all rights to a jury trial regarding any Dispute. You also waive your rights under Part 137 of the Rules of the Chief Administrator of the Courts of New York to mediate and/or arbitrate any fee dispute if the fee is between $1,000 and $50,000 and to commence an action for review in a court of competent jurisdiction if the award aggrieves you.

By entering into agreements that require arbitration as the way to resolve fee disputes, you give up (i.e., waive) your right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration.

Please confirm your approval of this Agreement by signing and returning a duplicate copy. If you have any questions, or if this Agreement does not accurately set forth our arrangement, please let me know.

Very truly yours,
LIPSKY LOWE LLP


s/ Douglas B. Lipsky
Douglas B. Lipsky

Enclosures


AGREED AND ACCEPTED:

_____

9/26/2019
_____
(Date)




Initial Here: ▮▮▮▮▮▮▮▮ _

DocuSign Envelope ID: 861EF81E-6DEC-475C-9E02-34B0E15A11A2



Douglas B. Lipsky

420 Lexington Avenue, Suite 1830
New York, New York 10170
Main:  212.392.4772
Direct:  212.444.1024
Fax:  212.444.1030
doug@lipskylowe.com

www.lipskylowe.com

October 18, 2021

VIA EMAIL ███████████████ & DOCUSIGN

Re:      Engagement Letter Agreement

Dear ████ :

Thank you for selecting Lipsky Lowe LLP (the "Firm") to represent you. This Engagement Letter Agreement sets forth the terms of our attorney-client relationship.

1.      Scope of Engagement.
You have retained the Firm to advise you ███████████ ██████████████████████ (the "Matter").

2.      Fees, Costs and Billing.

The fees and costs for the Matter are unpredictable. Any fees and costs we might have previously discussed are therefore only estimates.

a.      It is agreed that you will compensate us for services based on the time devoted to the Matter at the hourly rates this Firm charges: my hourly rate is $650; Senior Associate rate is $450; Mid-year Associate rate is $375 Junior Associate Rate is $300; and our paralegal's rate is $100. These rates may change from time-to-time. We will advise you prior to any rate changes. We will bill you for support services, such as postage and messenger service. I will have primary responsibility for your matter.

b.      Invoices are normally sent to you each month and reflect the services and costs incurred the previous month. Payment is due promptly upon receipt. We are entitled to assess a late charge of 2.0% per month on any outstanding balance older than 60 calendar days.

3.      Replenishing Retainer.

Initial Here:

DocuSign Envelope ID: 861EF81E-6DEC-475C-9E02-34B0E15A11A2





October 18, 2021
Page 2 of 3

The Firm's representation will commence when we receive a $3,500.00 retainer. These funds will be deposited in our client trust account, and we will draw against these funds to satisfy our monthly invoices, copies of which will be sent to you for your information. Upon depleting all or any portion of the retainer, we will so advise you, and you agree to pay any and all amounts you owe that are in excess of the depleted retainer (if applicable) and to restore the retainer to the amount provided hereinabove.

4.    Client Files and Records.
        You understand and acknowledge the Firm utilizes Internet cloud-based methods of document storage and related systems, and you hereby agree that such methods are acceptable to you, and you disclaim any rights or remedies you may have with respect to any failure of such methods not due to the negligence or misconduct of the Firm.

5.    Communications about your Matter.
        Any opinions or beliefs we have expressed or will express about the Matter are just that: an opinion. We cannot guarantee any outcome in the Matter.

6.    Statement of Client's Rights and Responsibilities (Enclosures).
        Enclosed with this Agreement are the Statement of Client's Rights and Statement of Client's Responsibilities. All New York-based attorneys are required to provide their clients with these documents.

7.    Dispute Resolution.
        In the unlikely event that any dispute should arise between you and the Firm concerning our fees and expenses or the performance of our professional responsibilities, any such dispute shall be submitted to binding arbitration pursuant to the applicable rules of the American Arbitration Association and shall be governed under New York law. In addition to any amounts awarded on the merits, the prevailing party in such arbitration shall be entitled to recover the reasonable value of the attorney services (including the Firm's own time) and costs in connection with said arbitration. Any such arbitration shall be conducted in the Borough of Manhattan in New York, before one arbitrator and in the English language. Either party may seek confirmation of the arbitration award in the Supreme Court of the State of New York in New York County, and each party hereby consents to the exclusive jurisdiction and venue of the Supreme Court of the State of New York, in New York County with respect to same. By signing this Agreement containing this provision, you agree to waive any and all rights to a jury trial regarding any such dispute.

Initial Here: _ 

DocuSign Envelope ID: 861EF81E-6DEC-475C-9E02-34B0E15A11A2





October 18, 2021
Page 3 of 3

8.    <u>Executing the Agreement.</u>
    Please confirm your approval of this Agreement by signing it and initialing each page via DocuSign. If you have any questions, or if this Agreement does not accurately set forth our arrangement, please let me know.

    We look forward to working with you.

                        Very truly yours,
                        LIPSKY LOWE LLP


                        <u>s/ Douglas B. Lipsky</u>
                        Douglas B. Lipsky


Enclosures


    AGREED AND ACCEPTED:

    ███████████████████████

    10/21/2021
    _____
    (Date)

Initial Here: _ ███████████

DocuSign Envelope ID: 0676A889-3E48-4D56-A9D7-38107151314B



Douglas B. Lipsky

630 Third Avenue, Fifth Floor
New York, New York 10017
Main:  212.392.4772
Direct:  212.444.1024
Fax:  212.444.1030
doug@lipskylowe.com

www.lipskylowe.com

July 28, 2021

<u>VIA EMAIL</u> ███████████ & DOCUSIGN
███████████

Re:    <u>Engagement Letter Agreement</u>

Dear ████

Thank you for selecting Lipsky Lowe LLP to represent you. This Engagement Letter Agreement ("Agreement") confirms the terms of our attorney-client relationship.

1.    <u>Scope of Engagement.</u>  You have retained the Firm to represent you in the lawsuit ████████████████████████████████████████ New York ("the "Matter").

2.    <u>Fees, Costs and Billing.</u>  The fees and costs for the Matter are unpredictable. Any fees and costs we might have previously discussed are therefore only estimates.

a.    It is agreed that you will compensate us for services based on the time devoted to the Matter at the hourly rates this Firm charges: my hourly rate is $625; Chris Lowe's (Partner) is $635; Senior Associates are $375; Junior Associates are $325 and our paralegal's rate is $115. We will advise you prior to any rate changes. We will bill you for support services, such as postage, photocopies ($.10/ page) and messenger service.

b.    Invoices are normally sent to you each month and reflect the services and costs incurred the previous month. Payment is due promptly upon receipt. We are entitled to assess a late charge of 2.0% per month on any outstanding balance older than 60 calendar days.

3.    <u>Replenishing Retainer.</u>  The Firm's representation will not commence until we receive a $25,000 retainer. These funds will be deposited in our client trust account, and we will draw against these funds to satisfy our monthly invoices, copies of which will be sent to you for your information. We will advise you upon depleting all or any portion of the retainer, and you agree to pay any and all amounts you owe that are in excess of the depleted retainer (if applicable). When the retainer is at $5,000, you agree to replenish it back to $25,000. You understand that failing to adhere to this paragraph will be a basis for the Firm to withdraw as your counsel.

Initial Here: ___ ████████

DocuSign Envelope ID: 0676A889-3E48-4D56-A9D7-38107151314B



July 28, 2021
Page 2 of 3

4.    Termination of Representation

a.    Either of us may terminate this Agreement at any time for any reason by written notice (including by email). The Firm is subject to applicable rules of professional conduct when terminating a client engagement. If we terminate the engagement, the Firm will take all reasonable and practical steps to protect your interests in the Matter and, at your request, suggest possible new counsel.

b.    Subject to the applicable rules of professional conduct, if you or the Firm terminate this Agreement prior to the Matter being resolved, you remain responsible for fees and costs to date.

c.    The Firm's representation of you on the Matter does not bind the Firm to representing you in any appeal. The Firm retains sole discretion, subject to applicable rules of professional conduct, in deciding whether to represent you in such instance; if you wish to pursue an appeal or oppose an appeal, and the Firm agrees to represent you in such appeal, the terms of this Agreement shall continue to be binding.

5.    Disposition of Files and Cloud-Based Storage

a.    We will retain our own files pertaining to the Matter, including material prepared by or for the internal use of our attorneys. The Firm has internal policies that determine the retention periods for closed files.

b.    You understand and acknowledge that the Firm utilizes Internet cloud-based methods of document storage and related systems (*e.g.*, Dropbox), and you hereby agree that such methods are acceptable to you, and you disclaim any rights or remedies you may have with respect to any failure of such methods not due to the negligence or misconduct of the Firm.

6.    Communication.    Either at the beginning or during representation, we might express opinions or beliefs concerning the Matter and the results that might be anticipated. Any such statement made by us is an expression of opinion only; it is not a promise or guarantee of results.

7.    Statement of Client's Rights and Responsibilities (Enclosures).    Enclosed with this Agreement are the Statement of Client's Rights and Statement of Client's Responsibilities. All New York-based attorneys are legally required to provide these documents to their clients.

8.    Arbitration.    Any dispute over fees and/or costs (a "Dispute") will be submitted to and settled exclusively by binding arbitration, in accordance with the provisions of this Paragraph, subject only to any applicable requirement of law that the parties engage in a preliminary non-binding mediation or arbitration regarding fee disputes. Binding arbitration shall be conducted in accordance with the Judicial Arbitration and Mediation Service Streamlined Rules & Procedures (the "JAMS Rules") and governed under New York law. Arbitration shall be held in the County of New York, Borough of Manhattan, before an arbitrator selected pursuant to the JAMS Rules who will have no personal or pecuniary interest, either directly or indirectly, from any business or family relationship with either of the parties. All decisions of the arbitrator will be final, binding, and conclusive on the parties.

Initial Here: _____

DocuSign Envelope ID: 0676A889-3E48-4D56-A9D7-38107151314B





July 28, 2021
Page 3 of 3

The parties will equally share the costs of the arbitrator and the arbitration fee (if any). Each party will bear that party's own attorneys' fees and costs, and the prevailing party will not be entitled to reimbursement by the other party of any of its fees or costs incurred in connection with the arbitration hereunder, regardless of any rule to the contrary in the applicable arbitration rules. Either party may seek confirmation of the arbitration award in the Supreme Court of the State of New York in New York County, and each party hereby consents to the exclusive jurisdiction and venue of the Supreme Court of the State of New York, in New York County in any claim or action arising hereunder. By signing this Agreement containing this provision, you agree to waive any and all rights to a jury trial regarding any Dispute. You also waive your rights under Part 137 of the Rules of the Chief Administrator of the Courts of New York to mediate and/or arbitrate any fee dispute if the fee is between $1,000 and $50,000 and to commence an action for review in a court of competent jurisdiction if the award aggrieves you.

By entering into agreements that require arbitration as the way to resolve fee disputes, you give up (i.e., waive) your right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration.

Please confirm your approval of this Agreement by signing and returning a duplicate copy. If you have any questions, or if this Agreement does not accurately set forth our arrangement, please let me know.

Very truly yours,
LIPSKY LOWE LLP


s/ Douglas B. Lipsky
Douglas B. Lipsky

Enclosures


AGREED AND ACCEPTED:

████████████████████
████████████████████

7/28/2021
(Date)


Initial Here: _____

Exhibit D

# Activities Export

07/14/2022
4:08 PM

| Date | Type | Description | Matter | User | Qty | Rate ($) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| 08/21/2021 | $ | Filing fee<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga<br>Iram v. Emmons Place | Douglas Lipsky | 1.00 | $402.00 | - | $402.00 |
| 08/31/2021 | $ | Process server<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga<br>Iram v. Emmons Place | Douglas Lipsky | 1.00 | $62.50 | - | $62.50 |
| 03/25/2022 | $ | Mediation fee.<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga<br>Iram v. Emmons Place | Douglas Lipsky | 1.00 | $300.00 | - | $300.00 |
| 05/24/2022 | $ | Mediation fee<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga<br>Iram v. Emmons Place | Douglas Lipsky | 1.00 | $437.50 | - | $437.50 |
| 07/06/2022 | $ | FedEx of settlement checks<br>● Unbilled | 01335-Raiter<br>Oxana Raiter and Olga<br>Iram v. Emmons Place | Douglas Lipsky | 1.00 | $75.28 | - | $75.28 |
| | | | | | | | **$0.00**<br>0.00h | **$1,277.28**<br>0.00h |