UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

OXANA RAITER, *et al.*

                Plaintiffs,

   -against-                                         **ORDER**
                                                      21 CV 4410 (CLP)

DESSERT PALACE BOSE INC., *et al.*,

                Defendants.

-----------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

On August 5, 2021, plaintiffs Oxana Raiter, Olga Samoylova Iram, Andrey Leontyev, and Eugene Azov ("plaintiffs") filed a complaint on behalf of themselves and other similarly situated individuals against Dessert Palace Bose Inc., d/b/a "Emmons Palace" and "Dessert Palace" (hereinafter, "Dessert Palace") and individual defendant Efim Milrud (collectively, "defendants"). Plaintiffs seek damages for unpaid minimum and spread-of-hour wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., the Code of Federal Regulations §§ 785.13, 785.11, the New York Labor Law ("NYLL") § 650, et seq., and Article 12 of the New York Code of Rules and Regulations §§ 142-2.2, 146-1.6 ("NYCCR"). As part of their wage-and-hour claims, plaintiffs allege that defendants took unlawful deductions from their pay in violation of NYLL §§ 193, 198-B(2). In addition, plaintiffs Leontyev and Azov claim that defendants failed to reimburse them for the costs of their uniforms or pay for uniform laundering and maintenance as required under NYLL § 193 and 12 N.Y.C.R.R. §§ 137-1.8, 137-2.5.[1] Plaintiffs also seek damages for defendants' failure to provide proper wage notices and

---

[1] Plaintiffs Raiter and Samoylova also assert individual claims of gender discrimination, sexual harassment and hostile work environment under New York State Human Rights Law and New York City Human Rights Law.

statements, pursuant to the NYLL §§ 195(1), (3) and 12 NYCCR §§ 137-2.3 (repealed in 2011), 146-2.3.

The parties have consented to magistrate judge jurisdiction, and the District Court has reassigned the case to the undersigned for all further proceedings. (ECF Nos. 16, 17). Plaintiffs' motion for settlement approval, filed on behalf of all parties, is currently before this Court. (ECF No. 18). For the reasons set forth in this Order, the Court approves the parties' settlement as fair and reasonable and approves plaintiff's request for attorney's fees and costs.

FACTUAL AND PROCEDURAL BACKGROUND

According to plaintiffs, Dessert Palace is a New York corporation with its principal places of business located at 2265 and 2267 Emmons Avenue, Brooklyn, NY 11235. (Compl.[2] ¶ 12). Plaintiffs allege that individual defendant Milrud "owns, operates and controls" the Dessert Palace, and is responsible for the business's "day-to-day operations and management[.]" (Id. ¶ 15). Plaintiffs claim that they were employed by defendants, who had the power to hire and fire plaintiffs and exercised control over their working conditions, and that the Dessert Palace is an enterprise whose employees handle goods and materials that have been moved in interstate commerce and that grosses an "annual . . . volume of business" of at least $500,000. (Id. ¶¶ 13, 15-19).

Specifically, plaintiffs claim that defendants "operate and manage a Russian American restaurant[.]" (Id. ¶ 20). Plaintiff Raiter alleges that she worked for defendants as a bartender and barista from October 2014 to mid-April 2016, and then again from February 2017 to July 16, 2019. (Id. ¶ 23). Plaintiff Samoylova claims that she worked for defendants as a barista and

---

However, plaintiffs report that the parties have entered into a separate agreement regarding the discrimination and harassment claims. Thus, resolution of plaintiffs' claims arising under the FLSA and NYLL in this Order disposes of this matter.
[2] Citations to "Compl." Refer to the Complaint filed on August 5, 2021, ECF No. 1.

cashier from June 2017 to July 5, 2019. (Id. ¶ 24). Plaintiff Leontyev claims that he worked for defendants from the summer of 2012 until September 2019 in various positions, including as a busser, barista, bartender and cashier. (Id. ¶ 25). Plaintiff Azov alleges that he worked for defendants as a server from 2013 to mid-November 2015. (Id. ¶ 26).

Plaintiffs claim to have "regularly" worked more than 40 hours per week throughout their employment and that they were required to perform non-tipped side work, including setting up tables, cleaning the restaurant, cleaning the tables and chairs, polishing silverware, and folding napkins. (Id. ¶¶ 33, 47, 54, 56, 58, 68, 78-80). Moreover, plaintiffs claim that they were not compensated properly for the overtime hours that they worked or paid minimum wage or spread-of-hours pay. (Id. ¶¶ 46-58, 68-80). Plaintiffs also allege that defendants failed to properly keep track of the hours that they worked, and that defendants regularly deducted hours from the time that plaintiffs worked when calculating their wages. (Id. ¶¶ 64-80). In addition, plaintiffs claim that defendants failed to provide them with wage notices or statements at any point during their employment or post notices in the restaurant regarding employees' rights to minimum wages. (Id. ¶¶ 87-90).

In addition, plaintiff Azov also claims that his sole compensation was derived from customers' gratuities and, when a customer failed to pay a bill, defendants deducted the amount of the bill from the other tips that Azov received. (Id. ¶¶ 51-56, 74-77). Plaintiffs Leontyev and Azov also claim that defendants failed to pay for the uniforms that they were required to wear and did not pay the cost of cleaning their uniforms, which effectively further reduced their pay. (Id. ¶¶ 83-86).

On March 4, 2022, the Court referred the parties to mediation. On May 24, 2022, the parties reported that they had reached a settlement agreement in principle through mediation. On

3

July 14, 2022, the parties filed a joint motion for settlement approval setting out the agreed-upon settlement amount and payment plan as well as a copy of the parties' settlement agreement. (ECF No. 18). On July 26, 2022, this Court held a fairness hearing pursuant to Cheeks v. Freeport Pancake House, 796 F.3d 199 (2d Cir. 2015). On July 28, 2022, the parties filed a revised settlement agreement that included information that had been unintentionally omitted from their original filing.

## DISCUSSION

### I. Legal Standards

In determining whether to approve an FLSA settlement, courts consider whether the agreement "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." Le v. Sita Info. Networking Computing USA, Inc., No. 07 CV 86, 2008 WL 9398950, at *1 (E.D.N.Y. June 12, 2008) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982) (holding that, where an FLSA settlement is a reasonable compromise, the settlement should be approved to "promote the policy of encouraging settlement of litigation")). Courts have identified several factors to consider when determining whether a proposed settlement is fair and reasonable, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations and citations omitted); see also Cohetero v. Stone & Tile, Inc., No. 16 CV 4420, 2018 WL 565717, at *6 (E.D.N.Y. Jan. 25, 2018) (endorsing the factors from Wolinsky).

"When presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." Fisher v. SD Prot. Inc., 948 F.3d 593, 606 (2d Cir. 2020) (citing Evans v. Jeff D., 475 U.S. 717, 727 (1986)).  "[E]ven though a district court has a duty to review an FLSA settlement for reasonableness to prevent any potential abuse, this does not grant the court authority to rewrite contract provisions it finds objectionable." Id. at 606.  Rather, if the court finds one or more provisions of an FLSA settlement agreement to be unreasonable, the Court must reject the proposed settlement. Id. at 605.

II.   Settlement Terms

The total proposed settlement amount is $150,000.  (Pls.' Ltr.[3] at 7; Agr.[4] ¶ 4).  According to the proposed settlement agreement, $99,148.48 of the settlement funds will go to plaintiffs.  (Pls.' Ltr. at 7; Agr. ¶ 4).  The amount payable to the plaintiffs will be split between them according to their alleged unpaid wages as follows: $30,899.93 payable to Raiter; $20,152.13 payable to Samoylova; $39,856.44 payable to Leontyev; and $8,239 payable to Azov.  (Pls.' Ltr. at 7).  The remaining $50,851.52 of the settlement amount will be used to cover plaintiffs' counsel's fees and costs incurred during the litigation of this case.  (Pls.' Ltr. at 7; Agr. ¶ 4).

---

[3] Citations to "Pls.' Ltr." refer to plaintiffs' letter motion for settlement approval, filed with the Court on July 14, 2022, ECF No. 18.
[4] Citations to "Agr." refer to the copy of the proposed settlement agreement that the parties filed with the Court on July 14, 2022, ECF No. 18.

Plaintiffs estimate that, under the FLSA and NYLL, they collectively suffered a total of $220,563 in damages, excluding liquidated damages and pre-judgment interest. (Pls.' Ltr. at 4-6). Plaintiffs believe, however, that the settlement amount is reasonable given that "serious factual questions exist" regarding the hours that plaintiffs worked and the amounts that they were paid. (Id. at 7-10).

Specifically, defendants claim that Dessert Palace's employees' schedules were structured so that none of the restaurant's employees worked more than 40 hours a week or spent more than 20% of their time performing non-tipped work. (Id. at 7, 8). Moreover, defendants argue that at least the deductions that Azov alleges cannot be credited because Azov has failed to identify when or in what amounts the claimed deductions occurred. (Id. at 8). In fact, defendants allege that all of Azov's claims are time-barred as his employment was terminated in September 2015. (Id.) Defendants also claim that the uniforms that Leontyev and Azov allege that they were required to purchase without reimbursement were in fact T-shirts that defendants provided employees free of charge, and that defendants laundered the T-shirts along with the restaurant's linen at their own expense. (Id.)

Moreover, plaintiffs indicate that the parties participated in meaningful negotiations with the aid of an experienced arbitrator in arriving at the agreed-upon settlement amount. (Id. at 10). Plaintiffs also note that the settlement amount represents about 68% of the unpaid wages that plaintiffs claim that they are owed, and that defendants might not be able to satisfy a judgment larger than the settlement amount. (Id.)

Weighing the settlement amount agreed to here against the inherent risks and burdens that plaintiffs would face in pursuing their claims, and seeing no issues regarding potential coercion, fraud, or collusion in this case, the Court finds that the settlement reached through the

6

assistance of a neutral mediator, is fair and reasonable. See Wolinsky v. Scholastic Inc., 900 F. Supp. 2d at 335.

III. Attorney's Fees and Costs

Plaintiffs indicate that of the total settlement amount, $49,574.24 is to be paid to plaintiffs' counsel in attorney's fees, plus an additional $1,277.28 in costs, for a total of $50,851.52. (Pls.' Ltr. at 7; Agr. ¶ 4). Plaintiffs' counsel's fees, exclusive of costs, equal one-third of the net settlement amount. (Pls.' Ltr. at 11-12).

Courts must assess the reasonableness of plaintiffs' attorney's fees, regardless of whether the fee has been negotiated as part of the settlement amount. Beckert v. Rubinov, No. 15 CV 1951, 2015 WL 6503832, at *2 (S.D.N.Y. Oct. 27, 2015) (quoting Lliguichuzcha v. Cinema 60, LLC, 948 F. Supp. 2d. 362, 366 (S.D.N.Y. 2013)). The Second Circuit has set forth six factors to determine whether attorney's fees in FLSA settlements are reasonable: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000).

Courts employ the "lodestar" method in determining whether attorney's fees are reasonable, multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546, 551-52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008); Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 F. App'x 36 (2d Cir. 2002). Although there is a "strong presumption that this amount represents

7

a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors, Cowan v. Ernest Codelia, P.C., 2001 WL 30501, at *7; Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999), and courts in this Circuit have applied a multiplier to the lodestar calculation. Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014); see also Velandia v. Serendipity 3, Inc., No. 16 CV 1799, 2018 WL 3418776, at *5 (S.D.N.Y. July 12, 2018) (finding a multiplier of 1.2 to be a "reasonable lodestar modifier").

Instead of using the lodestar method, courts may also employ the "percentage of the fund" method. See McDaniel v. County of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010). With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable. Romero v. Westbury Jeep Chrysler Dodge, Inc., No. 15 CV 4145, 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016) (citing cases). However, a one-third percentage may be "simply too great" in relation to the work performed. Larrea v. FPC Coffees Realty Co., No. 15 CV 1515, 2017 WL 1857246, at *6 (S.D.N.Y. May 5, 2017) (declining to approve a one-third fee that would result in an 11.4 multiplier of the lodestar calculation). In FLSA cases, regardless of the method used, "'[t]he Court must . . . separately assess the reasonableness of plaintiffs' attorney's fees, even when the fee is negotiated as part of a settlement rather than judicially determined.'" Beckert v. Rubinov, No. 15 CV 1951, 2015 WL 6503832, at *2 (S.D.N.Y. Oct. 27, 2015) (quoting Lliguichuzcha v. Cinema 60, LLC, 948 F. Supp. 2d. 362, 366 (S.D.N.Y. 2013)).

Here, plaintiff was represented by Douglas B. Lipsky, who is a founding partner of Lipsky Lowe LLP, and Milana Dostanitch and Bayron Flores-Tapia, who are associates at counsel's firm. (Pl.'s Ltr. at 12-13). Counsel's paralegal, Carmen Espinal, also contributed to counsel's work on this matter. (Id. at 13).

Mr. Lipsky reports that he has practiced employment law for 19 years. (Id. at 12). Prior to founding Lipsky Lowe LLP, Mr. Lipsky was a senior associate at Seyfarth Shaw LLP in that firm's employment practice group. (Id.) Mr. Lipsky also purports to be an authority on wage and hour litigation. (Id.) According to counsel, Ms. Dostanitch is a 2014 graduate of Fordham University School of law and has practiced exclusively employment law since her graduation. (Id. at 13). Mr. Flores-Tapia graduated from Fordham University School of Law in 2021 and is a first-year associate at counsel's firm. (Id.) Ms. Espinal has worked as a paralegal since 2013, and holds a Master's degree in Public Administration from John Jay College of Criminal Justice and a Master's degree in Paralegal Studies from George Washington University. (Id.)

Counsel requests an hourly rate of $450 per hour for Mr. Lipsky's work, $325 per hour for Ms. Dostanitch's work, $275 per hour for Mr. Flores-Tapia's work, and $115 per hour for Ms. Espinal's work. (Id. at 12-13). According to plaintiffs' counsel, these rates have been approved by this Court before. (Id. (citing Heath v. One of Kind Transport Inc, et al., 21 CV 06920 (E.D.N.Y. Mar. 22, 2022) (approving hourly rate of $450 for Mr. Lipsky and $115 for Ms. Espinal); Kazadavenko v. Atl. Adult Day Care Ctr. Inc., No. 21 CV 3284, 2022 WL 2467541, at *4 (E.D.N.Y. Apr. 14, 2022) (approving an hourly rate of $325 for Ms. Dostanitch); Portillo v. Underhill Food Corp et al, 20 CV 05286 (E.D.N.Y. Nov. 2, 2020) (awarding Mr. Flores-Tapia a rate of $275 per hour)).

Using these rates, plaintiffs' counsel calculates a lodestar amount of $35,589.25. (Id. at 12-15). Counsel claims that counsel's firm expended more than 107.75 hours on this matter, and thus calculates the lodestar amount as follows: Mr. Lipsky spent a total of 12 hours working on the matter at a rate $450 per hour, totaling $5,400; Ms. Dostanitch has spent 86.6 hours on this matter at $350 per hour, totaling $28,145; Mr. Flores-Tapia has spent 6.2 hours on this matter at

9

a rate of $250 per hour, totaling $1,705; and Ms. Espinal has spent 2.95 hours on this matter at a rate $115 per hour, totaling $339.25. (Id. at 12). Counsel has attached contemporaneous time records to the letter motion for settlement approval that corroborate the hours that counsel claims to have spent on the case. (ECF No. 18, Ex. B). However, counsel's calculations are mistaken for Ms. Dostanitch and Mr. Flores-Tapia.

The Court calculates that if Ms. Dostanitch worked on this matter for a total of 86.6 hours and her pay rate is $350 per hour, then her contribution to the lodestar amount would be $30,310, not $28,145. However, because plaintiffs request the lesser amount of $28,145 for the work performed by Ms. Dostanitch, the Court finds that it is appropriate to calculate the lodestar using that amount. If Mr. Flores-Tapia spent 6.2 hours on this matter and his pay rate is $250 per hour, then his contribution to the lodestar would be $1,550, which is $155 less than what plaintiffs calculate. As such, the Court finds that, given the hours worked and rates of pay provided by plaintiffs' counsel, the proper lodestar amount is $35,434.25.

Counsel's requested fees of $49,574.24 represent a multiplier of 1.4 of the lodestar amount. As plaintiff's counsel notes, this is within the range of acceptable multipliers that have been approved in this Court. (Pls.' Ltr. at 15 (citing Pucciarelli v. Lakeview Cars, Inc., No. 16 CV 4751, 2017 WL 2778029, at *2 (E.D.N.Y. June 26, 2017) (approving a lodestar multiplier of 1.31); Hall v. ProSource Techs., LLC, No. 14 CV 2502, 2016 WL 1555128, at *14 (E.D.N.Y. Apr. 11, 2016) (approving a lodestar multiplier of 2.01)). Furthermore, counsel was able to navigate a settlement successfully and quickly, and the settlement agreement was reached through negotiations between experienced counsel and after mediation. Thus, as plaintiff's counsel is requesting one-third of the settlement amount, a percentage typically found reasonable

in this Circuit, and upon review of the parties' submissions and in consideration of the Goldberger factors set forth above, the Court approves the agreed-upon attorney's fees.

Plaintiffs' counsel also seeks $1,277.28 in costs representing the $402 filing fee, a $62.50 process serve fee, $737.50 in mediation fees, and $75.28 in mailing costs. (Id.) Counsel has attached an itemized list of the expenses incurred by counsel during the litigation of this matter to the letter motion for settlement approval. (Id., Ex. D). Courts in this Circuit have allowed counsel to collect reasonable costs in addition to one third of the settlement amount in fees. See Espindola v. Madison Glob. LLC, No. 18-CV-3420, 2019 WL 2388056, at *1 (S.D.N.Y. June 6, 2019); Espinosa v. SNAP Logistics Corp, No. 17 CV 6383, 2018 WL 11320988, at *2 (S.D.N.Y. Dec. 11, 2018) (holding that it is appropriate to award fees separately from costs); Beckert v. Ronirubinov, No. 15 CV 1951, 2015 WL 8773460, at *3 (S.D.N.Y. Dec. 14, 2015).

Counsel's claimed costs are reasonable. Thus, this Court finds that counsel may collect $1,277.28 in costs, in addition to $49,574.24 in attorney's fees from the settlement amount, for a total of $50,851.52.

## CONCLUSION

In this case, after holding a fairness hearing and reviewing the parties' submissions, the Court finds that the settlement reached is a fair and reasonable compromise of plaintiffs' claims. The Court reached its determination after considering the amount received, the issues that might have limited recovery, and the fact that the parties engaged in arms' length negotiations between experienced counsel and with the aid of a mediator sufficient to understand the risks and benefits of proceeding with the litigation. Cf. Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d at 355 (examining the factors courts consider when approving FLSA settlement agreements). The Court also finds that plaintiffs' counsel's request for fees is reasonable.

The parties are directed to file a stipulation of dismissal **by September 2, 2022.**

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**
Dated:  August 4, 2022
         Brooklyn, New York

                                         **/s/** Cheryl L. Pollak
                                         _____
                                         Cheryl L. Pollak
                                         United States Magistrate Judge
                                         Eastern District of New York